KIPP ET AL., RESPONDENTS, *v.* DAVIS–DALY COPPER CO.,
APPELLANT.

(No. 2,871.)

(Submitted June 27, 1910.   Decided July 6, 1910.)

[110 Pac. 237.]

*Cities and Towns—Use of Streets—Rights of Abutting Owners—
Powers of Council—Street Railroads for Carriage of Freight—
Public Use—Mining—Injunction—Pleading—Conclusions.*

Cities and Towns—Use of Streets—Extent of Powers of Council.
  1.  The municipal authorities which have control of streets and
  highways may use or permit the use of them in any manner or for
  any purpose reasonably incident to the appropriation of them to
  public travel, not only in view of the necessities and requirements
  of the public as they existed at the time the highway was created,
  but also in view of the constantly changing modes of travel and
  transportation brought about by the increase of population and ex-
  pansion in the volume of traffic.  For such changing public uses the
  owner of abutting property is presumed to have received compen-
  sation when the way was created.

Same—Use of Streets—Rights of Abutting Owners.
  2.  If a particular use of streets to which consent has been given
  by the municipal authorities is in the nature of a public use, and
  is not more burdensome than other public uses which may have
  been within possible contemplation at the time the way was cre-
  ated, it is not a taking or damaging of property of abutting owners
  within the constitutional provision that just compensation must first
  be made.

Same—Street Railroads—Hauling Freight—Mining—Public Use.
  3.  *Held,* that the use to which a railroad proposed to be con-
  structed in the streets of a city by a mining company was to be
  put in hauling supplies, ores, etc., to and from the company's mine,
  as well as supplies, ores, merchandise, etc., which might be offered
  for carriage by any person or corporation, was a public use.

Same — Street Railroads — Additional Servitude — Rights of Abutting
  Owners.
  4.  *Held,* that a railroad proposed to be constructed by a mining
  company over the streets and entirely within the limits of a city,
  for the carriage of supplies, ores, etc., which would otherwise have
  to be conveyed by teams, is not a "commercial" railroad as distin-
  guished from street railroads; that such contemplated use of the
  city's streets falls within their ordinary uses; and that, therefore,
  no additional servitude is cast upon the owner of abutting real prop-
  erty for which compensation must first be made.

Injunction—Pleading—Conclusions.
  5.  The bare statement in a complaint asking for an injunction to
  restrain a mining corporation from constructing a railroad upon and
  along the streets of a city under an ordinance granting it the right

to do so, that said ordinance was unreasonable, was a mere conclusion, and insufficient to warrant any relief on the ground that the council abused its discretion in enacting it.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by Louis Kipp and others against the Davis-Daly Copper Company. From an order granting plaintiffs an injunction, defendant appeals. Reversed.

*Mr. Chas. R. Leonard, Mr. M. S. Gunn,* and *Messrs. Lamb & Walker,* submitted a brief in behalf of Appellant. *Mr. Gunn* argued the cause orally.

Whether or not the construction, maintenance and operation of the street railroad in question is within the purposes for which a street may be lawfully used is, it seems to us, answered by certain provisions of the Constitution and statutory law of the state. (See Const., Art. XV, secs. 5, 12; Rev. Codes, subd. 6, sec. 3259.) In view of these provisions, the power of the city of Butte to grant the right of way through the streets for the construction, maintenance and operation of the railroad described in the ordinance is not open to question. This being true, does it not follow that the use of the streets for the construction, maintenance and operation of such a railroad was contemplated, or should be presumed to have been contemplated, when the streets were dedicated? If so, the abutting proprietors cannot complain. (See *Henry Gaus & Sons Mfg. Co. v. St. Louis, K. & N. W. R. Co.,* 113 Mo. 308, 35 Am. St. Rep. 706, 20 S. W. 658, 18 L. R. A. 339; *Arbenz v. Wheeling & Harrisburg R. R. Co.,* 33 W. Va. 1, 10 S. E. 14, 5 L. R. A. 371; *Morris & Essex R. R. Co. v. City of Newark,* 10 N. J. Eq. 352.)

Whether or not the respondents are entitled to compensation is a question of law. (Lewis on Eminent Domain, 3d ed., sec. 168; *Williams v. Brooklyn R. R. Co.,* 126 N. Y. 96, 26 N. E. 1048; *Hershfield v. Rocky Mt. Bell Tel. Co.,* 12 Mont. 102, 29 Pac. 883.)

*Mr. C. M. Parr,* and *Messrs. Kremer, Sanders & Kremer,* submitted a brief in behalf of Respondents. *Mr. Parr* argued the cause orally.

All modern authority does draw a clear and emphatic distinction between a street railroad for carriage of passengers and one for the carriage of freight. So-called commercial railroads in cities which transport freight are held to impose an additional servitude as against abutting property owners, and we fail to see any distinction between carrying freight to a mine and carrying whisky or other commodities to any part of the city. (See Lewis on Eminent Domain, sec. 164.)

Appellant cites the case of *Montgomery* v. *Santa Ana & W. R. Co.,* 104 Cal. 186, 43 Am. St. Rep. 89, 37 Pac. 786, 25 L. R. A. 654. The California court in that case was at a loss to see the distinction between a street railway for the carriage of passengers and a street railway for the carriage of freight or freight and passengers. It followed the Missouri decisions, which up to the case of *Sherlock* v. *Kansas City etc. R. R. Co.,* 142 Mo. 172, 64 Am. St. Rep. 551, 43 S. W. 629, had held the same way. But in the case of *Smith* v. *Southern Pac. R. Co.,* 146 Cal. 164, 106 Am. St. Rep. 17, 79 Pac. 868, the court repudiated this doctrine, and held that the building of a railroad on a narrow street causes damage to the abutting property owner.

Subject to the property rights and easements of abutting owners, the legislature "has full and paramount authority over all public ways and public places." (*Dooley Block* v. *Salt Lake R. T. Co.,* 9 Utah, 31, 33 Pac. 233, 24 L. R. A. 610.) These easements are property protected by the Constitution from being taken or damaged without compensation. (*Root* v. *Butte A. & P. Ry.,* 20 Mont. 354, 51 Pac. 155; *Less* v. *City of Butte,* 28 Mont. 27, 98 Am. St. Rep. 545, 72 Pac. 140, 61 L. R. A. 601; *Chicago* v. *Taylor,* 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638; *Eachus* v. *Los Angeles Ry.,* 103 Cal. 614, 42 Am. St. Rep. 149, 37 Pac. 750; *Regney* v. *City of Chicago,* 102 Ill. 64; *Brown* v. *City of Seattle,* 5 Wash. 35, 31 Pac. 313, 18 L. R. A. 161; *Lewis* v. *City of Seattle,* 5 Wash. 741, 32 Pac. 794; *Hickman* v. *City of Kansas,*

120 Mo. 110, 41 Am. St. Rep. 684, 25 S. W. 225, 23 L. R. A. 658; *Ft. Worth* v. *Howard,* 3 Tex. Civ. App. 537, 22 S. W. 1059; *Schaller* v. *Omaha,* 23 Neb. 325, 36 N. W. 533.)

"Public use" is synonymous with public benefit, or advantage, (*Olmstead* v. *Camp,* 33 Conn. 550, 89 Am. Dec. 221.) The taking of land by eminent domain act is for public use only. (*East St. Louis* v. *St. John,* 47 Ill. 466.) Statutes authorizing the exercise of eminent domain are subject to strict construction. (*Taylor* v. *Porter,* 4 Hill, 140, 40 Am. Dec. 281; *Embury* v. *Connor,* 3 N. Y. 511, 53 Am. Dec. 325.)

Damage to property is placed in the same category as the value of property taken, and neither can be done without compensation first made. (*Werth* v. *Springfield,* 78 Mo. 107; *Rearden* v. *San Francisco,* 66 Cal. 492, 56 Am. Rep. 109, 6 Pac. 317; *Blanchard* v. *Kansas,* 16 Fed. 444, 4 McCrary, 217; *Hamon* v. *Omaha,* 17 Neb. 548, 52 Am. St. Rep. 420, 23 N. W. 503; *Johnson* v. *Parkersburg,* 16 W. Va. 402, 37 Am. Rep. 779; *Chambers* v. *C. & G. R. Co.,* 69 Ga. 320; *McElroy* v. *Kansas City,* 21 Fed. 257; *New Brighton* v. *N. S. P. Church,* 96 Pa. 331; *Chicago* v. *Taylor,* 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638; *Brown* v. *City of Seattle,* 5 Wash. 35, 31 Pac. 313, 18 L. R. A. 161.)

An injunction will be granted where the street is narrow, and the railway will practically destroy it as a thoroughfare and deprive abutters of access to their property. (*Commonwealth* v. *Frankfort,* 92 Ky. 149, 17 S. W. 287; *Chicago etc. R. R. Co.* v. *Eisert,* 127 Ind. 156, 26 N. E. 759; *Hendree* v. *Toronto etc. R. R. Co.,* 26 Ont. 667; *Hepting* v. *New Orleans etc. R. R. Co.,* 36 La. Ann. 898; *Pepper* v. *Union Ry. Co.,* 113 Tenn. 53, 85 S. W. 864.) Injunction will lie where the line is a private railroad for private use. (*Glaessner* v. *Anheuser-Busch Brewery Assn.,* 100 Mo. 508, 13 S. W. 707, and cases cited in 2 Lewis' Eminent Domain, 3d ed., note 58, p. 1582.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to obtain an injunction to restrain the defendant corporation from constructing and operating a

line of railroad upon and along Ohio and Mercury streets, in King's addition to the city of Butte. Mercury street is one of the principal thoroughfares of the city, extending through it from east to west. Throughout the portion in controversy here it is fifty feet in width. The plaintiffs own lots abutting thereon on both sides, with a frontage in the aggregate of 1,000 feet. The defendant is a mining corporation, organized under the laws of the state of Maine, owning mines within the limits of the city and having its principal business in the city. On February 16, 1910, the city council, upon petition of defendant, enacted an ordinance granting to it the privilege of laying a line of railroad, with the necessary tracks, along Ohio street from its operating shaft upon the Colorado claim, 360 feet south to the intersection of Ohio and Mercury streets; thence 675 feet east along Mercury street, to a point beyond plaintiffs' property opposite other mining property belonging to the defendant; thence south through the latter to connect with a spur track of the Northern Pacific Railway Company, within the limits of the city. The ground for asking the privilege, as stated in defendant's petition to the council, was that it was engaged in operating and developing the Colorado mine; that a large quantity of ore and rock was being extracted daily; that it was possessed of no means by which this material could be conveyed away and supplies be delivered to the mine, except teams; and that it desired the privilege in order that it might readily effect the necessary transportation and secure connection with the spur track of the Northern Pacific Railway Company. The ordinance requires the tracks to be not wider than four feet between the rails, to be laid upon, and conform to, the grade of the street, and to be planked between the rails and on the outside thereof to the extent of one foot, under the supervision of the city authorities, so as to obstruct or impede travel over the streets as little as possible. It prescribes the character of cars which may be used, limiting the number to be run at any one time to three, and the maximum rate of speed for their movement; permits the use of any motive power other than steam by

direct application, reserves in favor of pedestrians and vehicles the right of way at crossings and in passing over the street, and declares with much particularity numerous requirements which must be observed by the defendant. It further provides that the track or tracks shall not remain on Ohio street longer than six months. At or before the expiration of that time the track or tracks must be removed to defendant's own property lying to the west of Ohio street and extending from the shafthouse south to Mercury street, a suitable connection to be made of this line with the line on the latter street. At the end of five years the use must be discontinued altogether, and the tracks removed. A condition of the grant is that the defendant shall carry "all ores, freight, coal, wood, timber, supplies, goods, wares and merchandise which shall be requested of the grantee herein by any person or corporation desiring to utilize the carrying facilities of said grantee, such carriage to be done in a reasonable manner and at reasonable times and for a reasonable consideration, * * * under the supervision and subject to the approval of the city council." The defendant is required to accept the grant in writing and to accompany its acceptance with a good and sufficient bond in the sum of $5,000, to be approved by the city council and conditioned to save the city harmless in case it shall be held liable for damages to any person by reason of the construction and maintenance of the railroad or of any act of negligence or carelessness in the management or operation thereof by the defendant or its successors or assigns. Upon the failure of the defendant to observe any of the requirements enumerated, the privilege granted may, upon notice by the council and at its option, be declared forfeited.

In addition to the foregoing, the complaint alleges, in substance, that the plaintiffs have property rights in Mercury street, in front of their respective lots, subject only to the right of the public to use the same as a highway; that the defendant has not, by an attempt to exercise the right of eminent domain, sought to condemn the plaintiffs' rights or to acquire them by agreement or purchase; that unless it is restrained from doing

so, it will proceed to appropriate for its railroad and use a large part of them without compensation to plaintiffs; that it is a mining corporation and is engaged exclusively in mining; that the line of road which it proposes to build under the grant from the city is a private line, to be owned and operated by it for its own use and benefit, and not otherwise, for hauling ore, rock and other materials taken from the Colorado mine, and delivering thereat supplies for its own private use; that if the railroad is constructed and equipped as is proposed by the defendant, it will prevent the plaintiffs from having free access to, and free use and enjoyment of, their property, and, by imposing an additional burden upon the street, diminish the value of their property; that defendant is a private corporation and has no right to use or occupy the streets of the city, nor any right to build or maintain a railroad thereon for its own use or benefit; that the city has not the power to grant to it a right or license to use the streets, or any of them, for that purpose; that the railroad is not necessary for the convenience of the public, and that the ordinance granting the right to defendant to construct and maintain it is unreasonable, and therefore void. The prayer is for a perpetual injunction. Upon the filing of the complaint the court issued an order to show cause, and, after a hearing upon the complaint and oral evidence, entered an order directing an injunction to issue as prayed. The appeal is from this order.

The question presented for decision is stated by counsel for appellant in their brief as follows: "If the construction and operation of the street railroad described in the ordinance is within the purposes for which the streets were established, the respondents have no cause of action. Abutting owners may suffer inconvenience, and their property may be depreciated in value by the use of the street for certain purposes, but if such use is legitimate and one which was in contemplation, or is presumed to have been in contemplation, when the street was created, there is no legal cause for complaint. There is, then, but one question for consideration on this appeal, which may be stated as follows: Is the construction and operation of the street

railroad in question within the purposes for which the streets were dedicated?

Under the statute (Revised Codes, sec. 3259) a city or town council has exclusive control over the streets, avenues, alleys and sidewalks of the city or town, and the power to regulate the use of them, not only for purposes of travel thereon by pedestrians, but also by vehicles of every character for the purpose of pleasure or business traffic. Under subdivision 66 of this section, it also has the power "to grant a right of way through the streets, avenues and other property of a city or town for the purpose of street or other railroads and to regulate the running and management of the same, and to compel the owner of such street or other railroad to keep the street in repair when occupied by such street or other railroad; to regulate the speed of railroad engines, and to require railroad companies to station flagmen at street crossings." This provision carries out the plain intent of section 12 of Article XV of the Constitution, which declares: "No street or other railroad shall be constructed within any city or town without the consent of the local authorities having control of the street or highway proposed to be occupied by such street or other railroad." Under another provision of the Codes, the fee to the land covered by a street once established is vested in the public; for the form of dedication required of the owner, when the plat of the city or town or an addition thereto is recorded, is equivalent to a deed. (Revised Codes, sec. 3470; *Hershfield* v. *Rocky Mt. Tel. Co.*, 12 Mont. 102, 29 Pac. 883.) But it is not important to inquire where the fee is vested. The respective rights of the abutting owner and the public are dependent upon the fact of dedication. In view of these provisions as well as of the rule of law recognized everywhere, the authorities which control streets and highways may use or permit the use of them in any manner or for any purpose which is reasonably incident to the appropriation of them to public travel and to the ordinary uses of streets or highways under the different conditions which arise from time to time. (*White* v. *Blanchard Bros. Granite Co.*, 178 Mass. 363, 59 N. E. 1025.) For

a highway is created for the use of the public, not only in view of its necessities and requirements as they exist, but also in view of the constantly changing modes and conditions of travel and transportation, brought about by improved methods and required by the increase of population and the expansion in the volume of traffic due to the ever-increasing needs of society. Were this not so, any change in these respects would require a readjustment of rights as between the public and the abutting property owner, because the result of it would of necessity be held an imposition of a new burden upon the highway, and hence upon the property of the abutting owner. For these changing public uses the owner must be presumed to have received compensation when the highway was created. (*White* v. *Blanchard Bros. Granite Co., supra; Montgomery* v. *Santa Ana W. Ry. Co.*, 104 Cal. 186, 43 Am. St. Rep. 89, 37 Pac. 786, 25 L. R. A. 654; *Mordhurst* v. *Ft. Wayne etc. Traction Co.*, 163 Ind. 268, 106 Am. St. Rep. 222, 71 N. E. 642, 66 L. R. A. 105; *Taylor* v. *Portsmouth etc. St. Ry. Co.*, 91 Me. 193, 64 Am. St. Rep. 216, 39 Atl. 560; *Cater* v. *Northwestern Tel. Ex. Co.*, 60 Minn. 539, 51 Am. St. Rep. 543, 63 N. W. 111, 28 L. R. A. 310; *Rafferty* v. *Central Traction Co.*, 147 Pa. 579, 30 Am. St. Rep. 763, 23 Atl. 884; *Doane* v. *Lake Street etc. R. R. Co.*, 165 Ill. 510, 56 Am. St. Rep. 265, 46 N. E. 520, 36 L. R. A. 97; *Citizens' Coach Co.* v. *Camden Horse R. R. Co.*, 33 N. J. Eq. 267, 36 Am. Rep. 542; *Julia Bldg. Assn.* v. *Bell Tel. Co.*, 88 Mo. 258, 57 Am. Rep. 398; Elliott on Roads and Streets, 2d ed., sec. 407.) The rule was recognized by this court in *Hershfield* v. *Rocky Mt. Bell Tel. Co., supra,* wherein it was held that the erection of telephone poles, to a reasonable extent, in the streets of a city is within the uses to which the streets may lawfully be put, when the use for this purpose has been sanctioned by the city authorities. This general rule is subject, however, to the limitation that "private property shall not be taken or damaged for public use without just compensation having been first made to or paid into court for the owner." Within this limitation, the power of the legislature is supreme, and while in delegating the power of control

to the municipality, it may impose such additional limitations as it chooses, yet if it does not impose any, the authorities of the municipality are free to act so long as the rights of the abutting owner are not invaded.

It is often difficult to determine whether a new use is such an invasion of the rights of an abutting owner as entitles him to damages within the meaning of the limitation. If it is, compensation must be made before the use is installed. But it must be borne in mind that the way was created for all uses to which it might reasonably be put in view of improved methods and the increasing needs of the public; and the limitation is to be given a construction which will not defeat this original purpose. And if the particular use to which consent has been given by the municipal authorities is in the nature of a public use, and is not more burdensome than other public uses which have been held to be within possible contemplation at the time the way was created, it is not a taking or damaging of the rights of the owner, within the purview of the limitation. (*White* v. *Blanchard Bros. Granite Co., supra.*)

That the purpose for which the defendant intends to build its railroad is in the nature of a public use must be admitted. Mining is a dominant industry in this state. In some localities it is the all-important industry. The prosperity of the state has been due, in large measure, to it, and many of our other industries and business enterprises are almost entirely dependent upon it. This is especially true in Butte and its immediate vicinity, because there the great mass of the people gain their livelihood from their employment in the mines and reduction of ores. There, as in many other localities in the state, the mineral deposits are the only available natural resources, and but for the promise which they give of profitable return for well-directed investment and industry, such portions of our state would be almost entirely destitute of population, whereas they now furnish homes and the means of support for populous communities. Hence, from the beginning, it has been the policy of the state, indicated by its constitutional and statute law, as interpreted by

this court, to foster and encourage the development of the state's mineral resources in every reasonable way. It has favored the industry of mining in the matter of the taxation of mining property (Const., Art. XII, sec. 3; *State* v. *Camp Sing*, 18 Mont. 128, 56 Am. St. Rep. 551, 44 Pac. 516, 32 L. R. A. 635; *Hale* v. *County of Jefferson*, 39 Mont. 137, 101 Pac. 973), and has included among the public uses for which private property may be taken by the exercise of the right of eminent domain, roads, tunnels, ditches, flumes, pipes and dumping places for working mines, mills, or smelters for the reduction of ores, etc. (Revised Codes, sec. 7331.) It has also declared that all railroads shall be public highways, and all railroad companies shall be public carriers (Const., Art. XV, sec. 5), and that all persons shall have equal right to have persons or property transported on and over any railroad (Const., Art. XV, sec. 7). In view of these express requirements, and the paramount importance of the mining industry, it has been held by this court that a railroad company may acquire, by the exercise of the right of eminent domain, right of way for its lateral lines extending to mines and smelters, though owned by private persons, as well as the right of crossing with them the main or lateral lines of other roads. (*Butte, A. & Pac. R. Co.* v. *Montana U. Ry. Co.*, 16 Mont. 504, 50 Am. St. Rep. 508, 41 Pac. 232, 31 L. R. A. 298.) It may be that a natural person or a corporation other than a railroad corporation may not, for a right of way for a railroad, acquire the property of others by the exercise of the right of eminent domain, because the legislature has not so provided. Yet if such ownership is acquired, it must of necessity be subject to all the burdens imposed by the fundamental law. And this necessity was recognized by the city council, in including among the provisions of the ordinance granting the right in question, a requirement that the defendant shall carry all ores, supplies, etc., which other persons may require it to carry. And while the road may not be so situated or of such extent that its services may be in great demand, or demanded at all by the public, yet the "character of a way, whether it is public or private, is determined by the extent

of the right to use it, and not by the extent to which that right is exercised. If all the people have the right to use it, it is a public way, although the number who have occasion to exercise the right is very small." (*Butte, A. & Pac. Ry. Co.* v. *Montana U. Ry. Co., supra.*)

Since, in view of the foregoing provisions, we must conclude that the use to which the city council has given its consent is a public use, it remains only to inquire whether the installation of the use in question will result in damage to the plaintiffs, within the meaning of the constitutional prohibition.

It is conceded by counsel for the defendant that the construction of a street passenger railway upon the surface of a street, and the operation of it by means of horse-power or a trolley system is a legitimate use of the street; that it imposes no additional burden upon the fee, and that the abutting owner, whether he owns the fee or not, is not entitled to compensation for damage resulting therefrom. This concession is properly made, because this view is sustained by the decisions of the courts generally. (1 Lewis on Eminent Domain, 3d ed., secs. 158, 161, and cases cited in notes; 3 Abbott's Municipal Corporations, sec. 844.) But it is said that the same rule does not apply to a commercial railroad, and that the one defendant proposes to build falls within this class. There is, however, a distinction everywhere recognized between what are termed commercial railroads and what are termed street railroads. The former are defined by Mr. Lewis as railroads employed in general freight and passenger traffic from one town to another, or between one place and another. The latter, he says, includes all such as are constructed in public streets for the purpose of conveying passengers, with hand luggage, from one point to another on the street. (1 Lewis on Eminent Domain, 3d ed., sec. 150.) We readily concede that a commercial railroad does not fall within the uses to which the streets of a city or town are presumed to have been dedicated. The servitudes to which they are subject, are: The right of transit by travelers on foot or in vehicles of any description; the right to transmit intelligence by letter, mes-

sages, or any other method suitable for this purpose, as by telegraph or telephone; the right to transmit water, gas or sewage for the use and benefit of the public, and the right to transport personal effects, such as goods, wares and merchandise, either by hand or by any conveyance suitable for that purpose. These rights are to be enjoyed by all in common, and every individual may employ such means of locomotion as may be employed by every other, and is not destructive of the means employed theretofore. As society advances and new inventions are made, different means of locomotion and conveyance may be employed. A vehicle propelled by steam or electricity, upon a fixed track constructed so as to conform to the surface of a street, is as legitimate as one drawn by horses. The installation of the structures and machinery necessary to the operation of a commercial railroad, massive and permanent as they must be, would be inconsistent with these rights, and in a large measure entirely destructive of them, by excluding from the street travel and traffic by ordinary modes. The railroad proposed here, however, does not fall within the definition of a commercial railroad. The question, then, may be stated thus: Is a railroad constructed along a street, within the limits of a city, exclusively within such limits and for the purpose of conveying freight which would otherwise be conveyed thereon by teams, within the ordinary uses of the street?

In New York, street railroads are authorized by statute to convey persons and property in cars for compensation. It is held by the courts of that state that this authorizes such railroads to operate cars designed and intended exclusively for carrying express matter, freight or property. (*De Grauw* v. *Long Island El. Ry. Co.*, 43 App. Div. 502, 60 N. Y. Supp. 163; s. c., 163 N. Y. 597, 57 N. E. 1108; *Matter of Stillwater & M. St. Ry. Co.*, 171 N. Y. 589, 64 N. E. 511, 59 L. R. A. 489.) So in *White* v. *Blanchard Bros. Granite Co.*, *supra*, it was held that the construction of a horse railroad along a highway from a quarry to a steam railroad, to be used for the transportation of freight only, did not impose an additional burden upon the abutting

property. The ground for this conclusion was that the transportation of freight over the highway is one of its legitimate uses, and that it is not any more burdensome to transport it in cars moving upon a fixed track, than it would be to transport it by means of wagons drawn by horses.

In the case of *Mordhurst* v. *Ft. Wayne & S. W. Traction Co., supra,* it was held that the operation of an interurban railroad by electric power, through a city street upon a track constructed of T rails, with authority to convey passengers, baggage, mail, and light express with a limited number of cars, did not impose an additional burden upon the abutting property. In discussing the question whether the carrying of the articles permitted by the charter of the railroad would have this effect, the court said: "The carriage of light express matter, passenger baggage, and mail matter upon street-cars would not constitute ground of complaint on the part of abutting lot owners. If only one car is run, the street is occupied and obstructed by it to no greater extent than it would be by a street car. If two constitute a train, they will take up no more space and do no more injury than a motor car and trailer, which are commonly run upon street railroad tracks when the business of the company requires such additional car. The fact that light express matter, passenger baggage, and United States mail matter are carried on a car does not affect the property owner, nor injure his property. The transportation of articles of this kind does not create any resemblance between the interurban electric railroad and a steam railroad carrying ordinary goods and merchandise, and results in none of the annoyances and injuries which are caused by either passenger or freight trains on such a railroad. * * * It is apparent that every objection founded upon injury to his property rights which the plaintiff can justly urge against the use by the defendant of Fulton street in front of plaintiff's lots would apply with equal force to the use of that thoroughfare by an electric street railroad constructed and operated wholly within the city limits. But this court has held that such a street railroad is not an additional burden upon the street, and that the owners of abutting real estate are not en-

titled to compensation on account of such appropriation and use.'' The same conclusion was reached by the same court, in *Kinsey* v. *Traction Co.*, 169 Ind. 563, 81 N. E. 922.

In *Montgomery* v. *Santa Ana W. R. Co., supra,* it was said: ''In the construction of modern highways, urban and suburban, the great difficulty and the prominent object has been to build and adapt them by grade, width, and structure of roadbed to the carriage of freight. Yet we are told in effect that, so far as modern methods are concerned, so far as ease, speed, and economy are involved, improvements are to be limited to the transportation of passengers; that cars with wheels adjusted to move upon fixed tracks, when applied to the transportation of passengers, are within the contemplated objects in view in opening the road or street, and therefore add nothing material to the burden of the servitude of the abutting land owner, while a precisely similar structure adapted to the transportation of freight adds an additional burden of a different character to the servitude, and cannot be tolerated without compensation to the abutting owner. An interminable string of heavy drays may thunder through the street from early morning until set of sun, a menace to all who frequent the thoroughfare and an inconvenience to all dwellers thereon; but the cars of a railway, which move usually but a few times a day, and with infinitely less annoyance to the public, upon tracks so adjusted to the surface as to occasion little or no inconvenience, cannot be tolerated. We fail to appreciate the philosophy of the distinction. On the contrary, we affirm that when a public street in a city is dedicated to the general use of the public, it involves its use subject to municipal control and limitation, for all the uses and purposes of the public as a street, including such methods for the transportation of passengers and freight as modern science and improvements may have rendered necessary, and that the application of these methods, and indeed of those yet to be discovered, must have been contemplated when the street was opened and the right of way obtained, whether by dedication, purchase, or condemnation proceedings, and hence that such a

user imposes no new burden or servitude upon the owner of the abutting land.''

It was held by the supreme court of Missouri, in *Henry Gaus & Sons Mfg. Co.* v. *St. Louis, K. & N. Ry. Co.*, 113 Mo. 308, 35 Am. St. Rep. 706, 20 S. W. 658, 18 L. R. A. 339, that the construction and operation of a commercial steam railroad along a public street on the established grade, under the authority of the city, did not violate the rights of abutting owners, within the purview of the provision of the Constitution *supra*. We should not be inclined to go to the extent to which this court goes, because the use of a highway by a commercial railroad cannot, upon any just principle, be held to be within the ordinary uses of the highway. Yet the case is authority for the proposition that the inauguration of a new use, under proper authority, within the general purposes for which the highway was created, is not a taking or damaging of the property of the abutting owner.

After discussing the cases upon the subject, Mr. Lewis makes the following observations: ''It would seem to follow that the operation of express cars on the street railway tracks was a legitimate use of the street. The use of street-cars for the transportation of freight has but just begun. Whether the practice is likely to increase and become general remains to be seen. When we direct our attention to the moving freight-car, taking the place of twenty drays, twenty pairs of horses and twenty drivers, the advantages of such a use of the streets seem obvious. It is presumably more economical. It saves wear and tear of the street, diminishes the accumulation of dirt and filth, relieves congestion, and diminishes the noise and confusion. The movement of the freight-car would no more interfere with abutting property than the movement of the passenger-car. To the extent that the freight-car is a substitute for traffic teams on the street it thus tends to make the street quieter, cleaner, freer, and more sanitary. And since the street exists as much for the movement of freight as for the movement of persons, there seems to be no reason why the street freight-car should not be put upon the same basis as the street passenger-car, in

so far as concerns the mere movement of the car on the tracks and in so far as it carries freight which would otherwise be carried in vehicles on the streets."

On principle, the rights of the abutting owner bear exactly the same relation to the inconveniences which are incident to the tracks installed for the movement of passenger-cars and the movement of cars thereon, as they do to the inconveniences which arise from the conveyance of freight by the same means. It can make no difference to him what the cars are loaded with; and if the city authorities so control their construction and movement as not to obstruct access to his property, more than it would be obstructed by the movement of passenger-cars, he has no cause for complaint on the ground that his constitutional rights are invaded.

While it may be inconvenient or impracticable for freight-cars to make frequent stops to receive and discharge freight, because this would cause a substantial interruption of ordinary street traffic, this consideration furnishes no objection to the movement of cars loaded with freight between designated points along a street upon which the same freight must be conveyed in drays or other similar vehicles. It may be, also, that in a given case a street may be so narrow that to permit the laying of tracks therein for any purpose would so far obstruct access to the property abutting thereon as to destroy its usefulness. Such a case, however, would present a question entirely different from that presented here, *viz.*, whether the city council has abused the discretionary power of control vested in it by law. While it is alleged in the complaint that the ordinance is unreasonable, the allegation is a mere conclusion, and is wholly insufficient to warrant any relief on the ground that the council abused its discretion in enacting it. (*Neary* v. *Northern Pac. Ry. Co., ante,* p. 480, 110 Pac. 226.)

Upon the facts stated, the plaintiffs have no cause of action, and hence the court erred in granting the injunction.

The order is reversed.

*Reversed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.