MITCHELL, Respondent, v. THOMAS, Appellant.

(No. 6,842.)

(Submitted November 6, 1931. Decided February 5, 1932.)

[8 Pac. (2d) 639.]

*Mr. Walter L. Pope* and *Mr. J. C. Garlington,* for Appellant,
submitted a brief; *Mr. Pope* argued the cause orally.

*Mr. Fred W. Schilling* and *Mr. Harry H. Parsons,* for Respondent, submitted a brief; *Mr. Schilling* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Plaintiff, while walking upon the sidewalk in front of defendant's building, in the city of Missoula, caught her heel in the defective covering of a coal-hole, fell, and was injured.

At the time the storeroom, on the ground floor, and the basement thereunder, were rented to one Therriault, who was conducting therein a soft-drink parlor known as the "French Club." The two upper stories of the building, which were subdivided, were rented to other tenants, for different periods, by defendant. Entrance to these is gained by a stairway, wholly within the building. The bottom of the stairway is upon the ground floor, which is reached from the street by opening a door and entering the building.

The coal-hole can be used only in connection with the basement and first floor. The upper stories are heated separately from the lower. The coal-hole in the sidewalk was directly in front of the "French Club," and during his occupation of the premises was used by Therriault for the reception of coal and other fuel into the basement. The coal-hole was a rectangular hatchway about two and one-half by four feet in size, covered by two steel sheeting doors, about a quarter of an inch thick, which swung upward and outward from the center. A hinge on one of the doors was rusted, with the result that one corner of the door was sprung above the common level of the sidewalk from one to two inches, leaving a sharp corner exposed. It was upon this projection that plaintiff tripped.

Therriault had two written leases of the "French Club" portion of the building, the last one expiring June 30, 1926, but he continued to occupy the premises "without lease," as defendant said; Therriault simply stayed on, paying the same rental as before—$125 per month in advance—until

January 1, 1930, when he vacated the premises. The hatchway was thirty years old or more, and had been repaired some ten years before the accident. The record does not disclose its condition during the year 1926, when the last written lease expired, and the tenancy from month to month (or whatever it was) began.

The accident to plaintiff happened November 22, 1929. In 1928 Therriault told defendant the coal-hole covering, which he called "the door," was in bad condition, and said it should be fixed, and defendant said he would fix it. Therriault suggested that a round hole be substituted for the rectangular one, to which defendant said yes, "but he did not say he was going to do it." Therriault continued: "As to whether that door remained in the same condition in 1927 and 1928 and 1929, well, it looks to me like the condition growed a little worse, you know. Every time you walk on the door it kind of twisted it a little bit. The only difference I saw through the years was each year it began to get a little higher off the walk."

Travelers along the street in front of the "French Club" would pass over the coal-hole or to the side of it. Those desiring to reach the second or third stories of defendant's building, if coming from the west, necessarily would use that portion of the sidewalk embracing the coal-hole as an approach to the door leading to the stairway.

The liability of a landlord for injury to a third person ██ ██ sustained by a defect in a sidewalk abutting the premises frequently presents a problem difficult of solution. Some propositions of law bearing on the subject are well settled, as, where the owner of an entire property has placed in the sidewalk an appliance for his own use, as a stairway, grating, or coal-hole, he is primarily liable if the appliance becomes defective while he remains in possession of the premises. (*St. Gemme* v. *Osterhaus*, 220 Mo. App. 863, 294 S. W. 1022; *Hamilton* v. *Standard Kid Mfg. Co.*, (Del.) 148 Atl. 289; *Harrington* v. *Alessi*, 269 Mass. 433, 169 N. E. 495; *Bently* v. *Rothschild Bros.*, 144 Mo. App. 612, 129 S. W. 249;

*Schneider* v. *Winkler,* 74 N. J. L. 71, 70 Atl. 731.) But, if the owner is out of possession because he has leased the entire property, the sidewalks being in good repair when the property was delivered to the tenant, the tenant, and not the owner, is responsible to a third person injured by reason of a failure to keep in repair. Tiffany says a landlord "is liable for injuries caused by conditions which existed at the time of the demise, and for injuries arising from the character of the use of the premises made by the tenant, if this use can be regarded as having been intended or contemplated by the lessor, while he is not liable for injuries caused by a condition on the premises arising after the demise or for injuries caused by the tenant's mode of using the premises, if he cannot be regarded as having connived at or authorized the creation of such conditions or such mode of use." (Tiffany on Landlord and Tenant, p. 675.)

The general rule is stated by Corpus Juris to be that the "lessor is not liable for personal injuries to a stranger due to the negligence of the lessee or his servants or agents or to the defective condition of the premises occurring after the beginning of the lease." (31 C. J. 239, note 37.) The main reason for the rule is that, prefacing that the premises and appurtenances are in good condition when leased, as the landlord grants the possession thereof to the tenant, the landlord's right of entry and possession being suspended during the term, if during the term, through the fault of the tenant, the premises or appurtenances become unsafe, the tenant, and not the landlord, is liable to a third person by reason of the defective condition. (16 R. C. L. 1079; *Fleischner* v. *Citizens' Real Estate & Inv. Co.,* 25 Or. 119, 35 Pac. 174.)

"A tenant in possession is, for all practical purposes, the owner of the property." (*Philadelphia* v. *Merchant & Evans Co.,* 296 Pa. 126, 145 Atl. 706, .707), and the rule is that, in the absence of a covenant on part of the landlord to repair, that duty rests upon the tenant. (16 R. C. L. 603, 613; Tiffany on Landlord and Tenant, p. 675; *Johnson* v. *McMillan,* 69 Mich. 36, 36 N. W. 803; *Wolf* v. *Kilpatrick,* 101 N. Y. 146,

54 Am. Rep. 672, 4 N. E. 188; *Szathmary* v. *Adams,* 166 Mass. 145, 44 N. E. 124; *Rider* v. *Clark,* 132 Cal. 382, 64 Pac. 564; *Ward* v. *Hinkleman,* 37 Wash. 375, 79 Pac. 956; 36 C. J. 125.)

As between landlord and tenant, there can be no objection to the rule, but we fail to see how either landlord or tenant by agreement respecting repairs may excuse himself from liability to the public.

Where, as in the case at bar, a portion of the building is controlled by the owner who has leased the ground floor of the building with an abutting sidewalk in which there is a coal-hole which has become defective after the lease by reason whereof a third person has been injured, the authorities are in conflict. Illustrative cases holding that the tenant, and not the owner, is liable, are *West Chicago Masonic Assn.* v. *Cohn,* 192 Ill. 210, 85 Am. St. Rep. 327, 55 L. R. A. 235, 61 N. E. 439, and *Runyon* v. *City of Los Angeles,* 40 Cal. App. 383, 180 Pac. 837.

The basic reasons for holding that the tenant, and not the landlord, is responsible where a third person has been injured because of a defect in a coal-hole in the sidewalk above the basement leased by the tenant, are: (1) That the landlord is not the occupant of the particular premises; (2) has no control of them; (3) would be a trespasser if he attempted to make the repairs; and (4) the duty to repair rests with the tenant. It is said also that the test of liability is whether the landlord had power to have remedied the condition. (16 R. C. L. 1079; *Ingwersen* v. *Rankin,* 47 N. J. L. 18, 54 Am. Rep. 109.) So much for the law under the overwhelming weight of authority.

The cases hold generally that the owner is responsible to a pedestrian suffering injury due to a defective sidewalk in front of a building, leased to different tenants, where the owner exercises general control of the entire building. (*Brown* v. *Weaver,* 1 Sad. 458, 5 Atl. 32; *Bruder* v. *Philadelphia,* 302 Pa. 378, 153 Atl. 725; *Stevenson* v. *Joy,* 152 Mass. 45, 25 N. E. 78; *Kirby* v. *Boylston Market Assn.,* 14 Gray (Mass.), 249, 74 Am. Dec. 682; *Jennings* v. *Van Schaick,* 108 N. Y. 530, 2 Am. St. Rep. 459, 15 N. E. 424; *Sawyer* v. *McGillicuddy,* 81 Me. 318, 10 Am. St. Rep. 260, 3 L. R. A. 458, 17 Atl. 124.)

Defendant here leased the entire first floor, less that required by the stairway, with the basement thereunder. (Had the injury occurred at the base of the stairway or upon the stairway itself, there would not be any question of the owner's liability. See *Griffin* v. *Jackson L. & P. Co.*, 128 Mich. 653, 55 L. R. A. 318, 87 N. W. 888, as reported in 92 Am. St. Rep. 496, with note on page 521.

In this state the sidewalk is a part of the street, the dedication of the land for that purpose being equivalent to a deed, and the fee is in the city so long as the land is used for the purposes to which it was dedicated. (*Kipp* v. *Davis-Daly Copper Co.*, 41 Mont. 509, 21 Ann. Cas. 1372, 36 L. R. A. (n. s.) 666, 110 Pac. 237.)

The use of a sidewalk for purposes of benefit to the abutting property is not an incident to the ownership of the property, but is merely a privilege in the nature of an easement. (3 Dillon on Municipal Corporations, 5th ed., secs. 1179, 1180.)

Supposing that, when defendant leased to Therriault the ground floor and basement, the covering of the coal-hole was in good condition, and keeping in mind that the entrance to the stairway and the two upper floors were under the management and general control of defendant, that there developed from ordinary wear and tear a defect in the coal-hole covering amounting to a nuisance, that the tenants of defendant used the sidewalk as an approach to the stairway, that the general public used the sidewalk as of right, does it follow that defendant may maintain his denial of liability on the theory that it was not his duty, but that of his tenant, to keep the coal-hole cover in repair? A similar contention was denied in the leading case of *Trustees of Canandaigua* v. *Foster*, 156 N. Y. 354, 66 Am. St. Rep. 575, 41 L. R. A. 554, 50 N. E. 971, the landlord being held liable where the injury arose from a defective covering over an excavation in the sidewalk in front of premises exclusively leased to a tenant generally, on the ground that the public policy of the state of New York required the abutting owner to be responsible

for the condition of any excavation in the public sidewalks as long as he retains possession of any part of the land or building abutting thereon. This case has been criticised as illogical. (See *West Chicago Masonic Assn.* v. *Cohn*, supra; Tiffany on Landlord and Tenant, pp. 689, 690.) It seems to be approved in *Security Savings & Commercial Bank* v. *Sullivan*, 49 App. D. C. 119, 261 Fed. 461, 462. In the case last cited it appeared that the first floor and basement were leased to. the Associated Drug Stores, which agreed to heat the entire building by means of a furnace in the basement. A vault under the sidewalk. formed part of the furnace-room, but the rest of the building above the first floor was under the control of the bank, and was rented by it in part to various tenants. The question was whether, the basement and first floor of the building being held under lease by the drug company, the tenant, and not the owner of the building, was liable for an injury sustained by a third person because of a defect in the sidewalk above the vault. The court called attention to the fact that the suit before the court was not one between the landlord and tenant, nor one arising from the negligence of the tenant within the portion of the premises occupied by it, but was a suit involving a member of the public who was injured upon a public sidewalk, and said: "In determining liability, it is proper to consider the obligation which the owner of the property assumed toward the public in extending his building under the sidewalk, and creating a condition in the walk which, if allowed to become defective, would jeopardize the safety of the public. * * * It may be suggested, though. of no importance in our view of the proper conclusion to be reached in this case, that there is nothing in the record to indicate that the bank could not have repaired the defect from the sidewalk without entering the demised premises; nor does it appear that defendant would have been a trespasser, had it, through its agents, entered the basement to repair the light, if such entry was necessary. The owner could not relieve itself of its duty to the public to keep the light in the sidewalk in repair so long as it continued to exercise control over any portion of the premises.

* * * In the present case the defect is not in the basement, or the vault under the sidewalk, but in the sidewalk, which is used in common by the public and all persons entering and leaving the premises of defendant bank. While incidentally it furnished light to the vault, it, in fact, is a part of the sidewalk, which, by virtue of its permit from the city, the bank has obligated itself to keep in repair. It is an appurtenance belonging to the premises for the use in common of the general public and all persons connected with or occupying the building, which the owner is required to maintain in safe condition as long as it retains control of a portion thereof." (*City of Seattle* v. *Puget Sound Imp. Co.*, 47 Wash. 22, 125 Am. St. Rep. 884, 14 Ann. Cas. 1045, 12 L. R. A. (n. s.) 949, 91 Pac. 255.)

We are not called upon to give our complete adherence to either doctrine. But we feel certain that those cases which rest upon the state of the contract between the landlord and the tenant, or upon the mere fact of the occupancy by the tenant of a basement beneath the sidewalk in which the defect existed, are faulty in disregarding the factor of public duty. Sidewalks along city streets in this state are maintained by public command, and the privilege of maintaining coal-holes therein is by public grace.

Our statutes declare that the "hirer of a thing must use ordinary care for its preservation in safety and in good condition," (sec. 7733, Rev. Codes 1921), and "must repair all deteriorations or injuries thereto occasioned by his ordinary negligence" (sec. 7734, Id.). These provisions apply to real as well as to personal property. (*Noe* v. *Cameron*, 62 Mont. 527, 205 Pac. 256.)

Whether the condition of the door was the result of ordinary wear and tear, or because of the tenant's failure to keep it in repair, is not clear upon the evidence. At any rate, it was a nuisance of which the landlord had actual notice; it was on his premises; he had been warned by the city engineer and by a policeman to repair the defect in the sidewalk, and had promised to attend to it. He did not assert that it was not

his duty to do so nor suggest it was the duty of the tenant. Moreover, it was not necessary for him to have entered upon the leased premises in order to repair the covering over the coal-hole. He could have done that without disturbing the possession of the tenant. It cannot be said that he would have become a trespasser, unless upon the theory that in making the repair he would interfere with the temporary use of an appurtenance to the premises—a sidewalk—of which the tenant had neither exclusive possession nor control. Furthermore, he had been requested by the tenant to repair the door over the coal-hole, and had promised to do so. This alone would have absolved him from any liability as a trespasser. "When the reason of a rule ceases, so should the rule itself." (Sec. 8739, Rev. Codes 1921.)

Considerable argument has been advanced by respective counsel as to the character of the tenancy, but, whatever it was, it is clear that the landlord could not have ended it without giving notice to the tenant to vacate. But, as is shown above, we do not regard that as affecting this case in any way.

Some of the authorities suggest that, under circumstances somewhat similar, both landlord and tenant are liable. (*Irvine* v. *Wood*, 51 N. Y. 224, 10 Am. Rep. 603.) We need not pass upon that question now. The retention of a major portion of the building by the landlord, the fact that his tenants were compelled to use the sidewalk leading to the stairway, and that he had the right to remedy the defect, is sufficient to fix liability upon him. (*Bruder* v. *Philadelphia,* supra.) The facts considered, we can see no reason, in principle, why this conclusion is not supported in every substantial particular by the well-reasoned case of *Bruder* v. *Philadelphia,* supra. Indeed, the argument that the tenant and not the landlord should be liable in this case is based upon a rule which, upon the facts here, is but little more than fiction; that is, that the tenant had exclusive possession of the sidewalk, that the landlord owed no duty to third persons to keep it in repair, and that he would be a trespasser if he attempted to do so.

We hold that defendant was charged with the duty of repairing the defect in the covering over the coal-hole, and must respond in damages to plaintiff injured thereby.

The following authorities are illustrative to a considerable degree of the points above discussed: Dillon on Municipal Corporations, p. 3030, note; *Whalen* v. *Gloucester,* 4 Hun (N. Y.), 24; *Granucci* v. *Claasen,* 204 Cal. 509, 59 A. L. R. 435, 269 Pac. 437, 438; *Jessen* v. *Sweigert,* 66 Cal. 182, 4 Pac. 1188, 1189; *Burke* v. *Schwerdt,* 66 Cal. xvii, 6 Pac. 381; *Bruder* v. *Philadelphia,* supra; *McLaughlin* v. *Kelly,* 230 Pa. 251, 50 L. R. A. (n. s.) 305, 79 Atl. 552; *Wardman* v. *Hanlon,* 52 App. D. C. 14, 280 Fed. 988, 26 A. L. R. 1249.

The defendant claims the damages are excessive, showing [7] passion and prejudice on part of the jury, but we cannot say as a matter of law that this is so. A motion for a new trial was not made, and the trial judge was not given an opportunity to pass upon this feature of the case. If he had been asked to reduce the amount of the verdict, he might have done so. We have no substantial basis for changing it.

The judgment is affirmed.

MR. JUSTICE GALEN concurs.

MR. JUSTICE MATTHEWS: I concur in the result reached and in much that is said in the foregoing opinion, but I cannot subscribe to the tacit recognition of the doctrine which relieves a landlord of liability in such a case merely because he has leased the building with the appurtenance in good condition, nor can I agree that the fact that the landlord retains control over a portion of the building is sufficient to take a case out of the operation of this doctrine. In my opinion, the reasoning in the *Canandaigua Case,* and those following it, is illogical. If an owner can relieve himself of all responsibility by leasing his entire building, why should he be held liable because he retains control over a portion of the building to which the offending improvement is not appurtenant any more than in a case where he leases the entire building but owns an adjoining structure?

Wood on Landlord and Tenant (919) declares "the doctrine is conflicting," stating the above and the contrary doctrine. I concede that the above doctrine is sustained by the numerical weight of authority, but am convinced that the contrary doctrine is supported by reason, logic and every consideration of justice and equity.

Many decisions announcing the above doctrine are based on facts showing negligence on the part of the tenant alone, as where the tenant or an employee, without the knowledge of the landlord, left an otherwise sufficient cover off or improperly adjusted, thus disclosing no breach of duty on the part of the landlord; with those decisions I agree, as "actionable negligence arises only from a breach of legal duty" (*Jonosky* v. *Northern Pacific Ry. Co.*, 57 Mont. 63, 187 Pac. 1014, 1015), and the controlling question in all personal injury actions is: Did the defendant breach a duty owing to the injured party? Where, however, an injury is suffered by reason of the fact that a coal-hole cover, or other appurtenance to the abutting building, set into the sidewalk, has been permitted to become dangerous to the traveling public by being out of repair, liability depends upon whether or not the party charged was in duty bound to repair it.

The decisions holding the tenant, and not the landlord, liable are built up around the supposed common-law duty of the tenant to make all repairs, but, as shown in the foregoing opinion, the common-law duty of the tenant extends only to repairs necessitated by reason of his negligence, and, even if in some states this test of liability is not recognized, it exists in this state by reason of our own statutes cited in the above opinion.

The common-law duty of the tenant is extended, in the decisions here criticised, by the specious reasoning that the landlord cannot enter upon the premises to make the repair, without committing a trespass; where the repair is to be made within the leased building, this reasoning may be logical, but, when applied to a case involving a mere appurtenance grafted upon a public way to which the landlord, as a member

of the general public, has free access at all times, the courts, at best, indulge in a fiction even in those states wherein the abutting owner holds the fee to his side of the street, and where, as here, the fee is in the city, the fiction becomes an absurdity. Under the circumstances here shown, how can it be said that the owner would be a trespasser in going upon the public sidewalk to repair a condition existing upon the surface thereof? "When the reason of a rule ceases, so should the rule itself." (Sec. 8739, Rev. Codes 1921.) The reason for the strained construction of the common-law duty of the tenant having ceased, the doctrine founded upon the fiction should not be applied.

It is said in the foregoing opinion that the test of the landlord's liability in such a case is his power to have remedied the wrong. In this state, under the circumstances of this case, the "power" of the defendant to have remedied the wrong by repairing the coal-hole cover, as he promised to do, is incontrovertible; but still he cannot be held liable in damages for the injury suffered, unless the record shows "actionable negligence" by failure to perform a legal duty, and, as the accident happened on a public sidewalk, ordinarily liability would attach to the municipality rather than the owner of the abutting property, as the duty to keep the sidewalk in reasonable repair is imposed upon the city, and not on the owner of abutting property. (13 R. C. L. 321.) An exception to this rule is recognized in all of the cases on the subject, regardless of which of the conflicting doctrines here discussed is adopted, i. e., that permission by the city to use a portion of the sidewalk for the benefit of abutting property carries with it the reciprocal duty to repair; hence the right to recover from either the landlord or the tenant, as the case may be.

In my opinion, the correct doctrine for application here was early developed in New York, though apparently abandoned in the *Canandaigua Case*, as follows: As a general rule, the owner of property abutting on a street is not in duty bound to keep the sidewalk in repair, and therefore is not liable to

a traveler injured by defects therein, not caused by him
(*City of Rochester* v. *Campbell*, 123 N. Y. 405, 20 Am. St. Rep.
760, 10 L. R. A. 393, 25 N. E. 937), but "where an abutting
owner avails himself of a privilege, which may be accorded to
him, of placing something in or by the sidewalk which will
serve as a convenience or easement to his premises, he becomes
also charged with the duty to see that the place thus used is
maintained in a safe and proper condition" (*Matthews* v.
*De Groff*, 13 App. Div. 356, 43 N. Y. Supp. 237, 239); not
only must he place that portion of the sidewalk used in a
reasonably safe condition, but must *keep* it in repair in con-
sideration of the private advantage secured. (*Heacock* v. *Sher-
man*, 14 Wend. (N. Y.) 58; *Congreve* v. *Morgan*, 18 N. Y. 84,
72 Am. Dec. 495; *Mullins* v. *Siegel-Cooper Co.*, 95 App. Div.
234, 88 N. Y. Supp. 737). As this is a duty imposed by law
upon the owner of the building, as such owner, it is immaterial
that, at the time of the accident, the premises were held by
a tenant, although circumstances may render the tenant as well
as the landlord responsible, in which case they may be joined
in an action for damages. (*Whalen* v. *Gloucester*, 4 Hun
(N. Y.), 24; *Irvine* v. *Wood*, 51 N. Y. 224, 10 Am. Rep. 603.)

"It may be safely assumed, that an individual making an
excavation in a street, for his own benefit, with the consent
of a municipal corporation, could not claim an immunity
which the corporation itself would not possess, if it were
doing the same work for the benefit of the public." (*Creed*
v. *Hartmann*, 29 N. Y. 591, 86 Am. Dec. 341.)

In other words, on the granting of the privilege to an in-
dividual to use a part of the street or sidewalk for the benefit
of his property, the public duty which the city owes to the
traveling public to keep the sidewalk in repair attaches to
the individual with respect to that which he, for his private
benefit and with the consent of the city, substitutes for a
portion of the sidewalk, and, this being a public duty, the
individual cannot, any more than can the city, claim immunity
from liability for failure to perform the duty by showing a
private contract of lease of the abutting property.

The New York doctrine is approved by Dillon in his work on Municipal Corporations, fifth edition, volume 4, page 3030. He calls attention to the fact that it is "denied to be sound" in *Fisher* v. *Thirkell,* 21 Mich. 1, 4 Am. Rep. 422, the leading case announcing the contrary doctrine, but declares: "Since these (improvements) are made for the exclusive benefit of the owner of the building, the author sees nothing unreasonable in the doctrine that he is bound to see that they do not become nuisances by becoming dangerous. There may be the additional liability of the tenant and of the municipality in proper cases."

In support of this doctrine, see *Moore* v. *Townsend,* 76 Minn. 64, 78 N. W. 880, and the California cases cited as "illustrative" in the latter part of the foregoing opinion. In California the public duty doctrine was first applied in a case of injury by the falling of a wooden "awning" over the sidewalk, the court declaring: "Where one has secured a privilege from the public, on condition, he cannot, after availing himself of the privilege, avoid his obligation to perform by leasing the premises," suggesting that the awning was doubtless a great convenience to the premises "and the fact of its being there may have enhanced the rent." (*Jessen* v. *Sweigert.*) Thereafter a "coal-hole" case was affirmed on the authority of the *Jessen Case* (*Burke* v. *Schwerdt*), and in 1928, without mention of the District Court of Appeals decision in *Runyon* v. *Los Angeles,* cited in the foregoing opinion, applied the rule announced in the *Jessen Case* to a situation wherein a pedestrian was injured because of the disrepair of a plank driveway set into and on the grade of the cement sidewalk, which was in good repair when the building to which it was appurtenant was leased, and the disrepair consisting merely of spikes working loose and projecting above the level of the planks constituting a part of the sidewalk as a result of the tenant's use of the driveway. Under the circumstances, the court held both the landlord and tenant liable, saying: "This driveway having been thus constructed * * * for the * * * convenience of the said defendants * * * the

duty was cast by law upon the defendants to exercise reasonable care and diligence in the keeping of said driveway at the point where it was superimposed upon said sidewalk in a proper and safe condition for the passage of pedestrians rightfully using said sidewalk." The duty thus imposed upon the defendant Claasen (the owner) continued during the entire period of the presence and use of said driveway, and she "could not relieve herself of such duty either by leasing the same to her codefendant or by contracting with him   *   *   * for the keeping of said premises and said driveway in a proper state of repair." (*Granucci* v. *Claasen*, 204 Cal. 509, 59 A. L. R. 435, 269 Pac. 437, 438.)

Thus the ancient doctrine in New York becomes the modern doctrine in California, whose laws are more nearly like ours than are those of any of the states in which the contrary doctrine is announced, and, in my opinion, this is the wholesome and proper doctrine for adopting here, when the question is presented for our consideration for the first time in this state.

There can be no logical distinction drawn between a coalhole, or a grating, or insertion of metal and glass for lighting purposes, occupying but a portion of the width of the sidewalk, and a driveway extending across the sidewalk, but constituting an integral part thereof.

The financially responsible landlord, the owner of the building improved by the construction of any of these appurtenances or easements to his property, who profits by reason of the special privilege accorded him, and not some fly-by-night tenant whose whereabouts may be unknown when action is to be brought, and, if available, may be judgment proof, should respond in damages for an injury suffered because that which enhances the value, the rent, or the rentability, of his building, is suffered to become out of repair. It is to the *owner*, not the occupant of the building, that the privilege of using a portion of the sidewalk, for the benefit of the building, is accorded, on the implied condition that he will not permit the

appurtenance to become a public nuisance by becoming out of repair.

As between themselves, the landlord and tenant may, of course, contract that the latter will make the repairs necessary, but the public cannot be bound by their private contract, and the landlord cannot evade his public duty by private agreement to shift it to another, although such a contract may permit the landlord to recoup his losses from his tenant. Why, then, should the mere fact that the owner has leased the building, in whole or in part, change the rule of liability recognized in all of the decisions in this class of cases? In fact, those decisions which make the statement that it does overlook the public duty of the owner and consider the duty of the landlord and tenant *inter sese*.

ASSOCIATE JUSTICES FORD and ANGSTMAN: We concur with what is said by MR. JUSTICE MATTHEWS, above.