UNITED STATES of America, Plaintiff,

v.

MOUNTAIN STATES TELEPHONE
AND TELEGRAPH COMPANY,
Defendant.

No. CV 75–138–M.

United States District Court,
D. Montana,
Missoula Division.

July 21, 1977.

626

Helena S. Maclay, Asst. U. S. Atty., Butte, Mont., for plaintiff.

Alan F. Cain, Hughes, Bennett & Cain, Helena, Mont., for defendant.

## OPINION

RUSSELL E. SMITH, Chief Judge.

Defendant Mountain States Telephone & Telegraph Company (Mountain Bell) is a public utility providing telephone service in the State of Montana. The Confederated Salish & Kootenai Tribes (Tribes) were organized pursuant to the Act of June 18, 1934, 48 Stat. 984, as amended, 25 U.S.C. § 461 et seq., and own the beneficial title to lands within the exterior boundaries of the Flathead Indian Reservation. Mountain Bell provides long-distance telephone service to the Reservation town of Hot

Springs, Montana, with a line running from Perma, Montana. In 1971 the Bonneville Power Administration energized a new high-voltage electric transmission line in close proximity to Mountain Bell's line and made it necessary for Mountain Bell to relocate its telephone line between Perma and Hot Springs. A portion of the relocated line consists of a cable buried in the public highway running through tribal lands. The question raised by this declaratory judgment action, brought by the United States for the benefit of the Tribes, is whether Mountain Bell may maintain the line without the consent of the Secretary of the Interior and the Tribes.

Mountain Bell contends that the Tribes are estopped by their conduct from maintaining this action. The record does not support that contention. The Tribal Council, the governing body of the Tribes, refused to grant an easement across tribal lands. There was some talk by members of the Tribal Council relative to the use of the public road, but there is no showing that the Council authorized anyone to speak for it or that the defendant had any right to rely on any of the street talk of Council members.

Mountain Bell contends that in Montana, by virtue of R.C.M.1947, § 70–301,[1] it has a right to lay a buried telephone cable in the right-of-way. The position taken is correct if the law of Montana applies to land owned by or held in trust for the Tribes. See Bolinger v. City of Bozeman, 158 Mont. 507, 593 P.2d 1062 (1972); Howard v. Flathead Tel. Co., 49 Mont. 197, 141 P. 153 (1914).

On June 5, 1916, the Superintendent of the Flathead Reservation approved a plat for a public road over Reservation lands in Sanders County, Montana, in these words:

1. "A telegraph, telephone, electric light, or electric power line, corporation, or public body or any other person owning or operating such, is hereby authorized to install its respective plants and appliances necessary for service, and to supply and distribute electricity for lighting, heating, power, and other purposes, and to that end to construct such telegraph, telephone, electric light or electric power line or power lines, from point to point, along and

upon any of the public roads, streets, and highways in the state of Montana, by the erection of necessary fixtures, including posts, piers, and abutments necessary for the wires. But the same shall be so constructed as not to incommode or endanger the public in the use of said roads, streets, or highways, and nothing herein shall be so construed as to restrict the powers of city or town councils." This section has been in its present form since 1907.

Approved as to restricted Indian lands involved, subject to the provisions of the Act of March 3, 1901, (31 Stats.L. 1058–1084); Department regulations thereunder; to the terms, conditions and covenants of agreement entered into by and between the County Commissioners and the Reclamation Service, dated June 5, 1916, and subject, also, to any prior, valid, existing rights and adverse claims.

/s/ Fred C. Morgan
Superintendent.

Section 4 of the Act of March 3, 1901, 31 Stat. 1084, 25 U.S.C. § 311, provides:

The Secretary of the Interior is authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper State or local authorities for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated, through any Indian reservation or through any lands which have been allotted in severalty to any individual Indian under any laws or treaties but which have not been conveyed to the allottee with full power of alienation.

In the case of *United States v. Oklahoma Gas & Electric Co.,* 318 U.S. 206, 63 S.Ct. 534, 87 L.Ed. 716 (1943), the Supreme Court held that a road opened and established, pursuant to the Act of March 3, 1901, through land outside of a Reservation, held by the United States in trust for individual Indian allottees, was governed by state law and that, under its law, the State of Oklahoma could permit a utility to establish an electric service line on the right-of-way without the approval of the Secretary of the Interior. The court reached the result by holding that the words "in accordance with the law of the State or Territory" embraced not only the state laws relating to the "opening and establishment" of the highway, but also to the state laws governing the incidental uses which might be made of the highway.

■ Here the controversy involves land, the beneficial ownership of which is in the Tribes rather than individual allottees, and which lies within the exterior boundaries of the Reservation. Section 4 of the Act of March 3, 1901, 31 Stat. 1084, 25 U.S.C. § 311, speaks of both Reservation and allotted lands, and the one question posed is whether the rule of *United States v. Oklahoma Gas & Electric Co., supra,* is to be applied to Reservation lands held by or in trust for the Tribes as distinguished from non-Reservation land held in trust for individual Indian allottees. The United States urges that the rule of *Oklahoma Gas & Electric* does not apply. The State of Montana did, by Mont. Const. Ord. I, Second (1889), and does by Mont. Const. art. I (1972), renounce jurisdiction of land held by Indian tribes. Certainly the State of Montana could not make its law applicable to Indian lands. To this extent, the argument of the United States is valid. Congress, however, has plenary power over Indian lands [2] and could grant to the states the right to build roads across Reservation lands and delineate the usage of such roads. The terms of the grant could be fixed in the congressional act or could be fixed by reference to state law. State law would then control, not because of the power of the state, but because of the congressional adoption of state law as the measure of the federal grant. The court in *United States v. Oklahoma Gas & Electric Co., supra,* did say 318 U.S. at 210, 63 S.Ct. at 536:

. . . These considerations, as well as the explicit reference in the Act to state law in the matter of "establishment" as well as of "opening" the highway, indicate that the question in this case is to be answered by reference to that law, in the absence of any governing administrative ruling, statute, or dominating consideration of Congressional policy to the contrary. We find none of these.

The United States contends that there are rulings, statutes, and policy considerations which preclude the application to this case of the ruling in *United States v. Oklahoma Gas & Electric Co., supra.* The policy con-

2. *Lone Wolf v. Hitchcock,* 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903).

siderations involved here are not different from those stated in *United States v. Oklahoma Gas.* The grant is to a public body. The easement for the telephone line would not survive the abandonment of the highway. The buried line here would not endanger highway travel or abutting owners. The line is essential to modern life. Montana is spotted with restricted lands held in trust for Indian allottees and tribes.[3] Complications and confusions would arise from applying to Indian lands rules differing from those which obtain as to non-Indian lands. The maintenance of a buried line in the highway right-of-way does no damage to the Tribes. The United States makes a policy argument to the effect that the damage to the Tribes is the erosion of the Tribes' and the Secretary's authority to control placement of utility lines on tribal lands. When a highway is established through Reservation lands under the Act of March 3, 1901, the power of the Secretary and the Tribes to manage the land embraced within the right-of-way is effectively eroded. If it is an erosion to permit the state or its grantees to make noninterfering and nondamaging incidental uses of the right-of-way, it is a most minimal one. As a matter of policy, there is no reason to distinguish between allotted lands and Reservation lands.

The plat was approved "subject to the provisions of the Act of March 3, 1901," and the United States argues that Section 3 of the Act empowered the Secretary to require permits for the construction of telephone lines across Reservation lands. In *United States v. Oklahoma Gas & Electric Co., supra,* the Court determined that the lands involved were not Reservation lands and, for that reason, it was not required to determine whether Section 4 altered the meaning of the words "opening and establishment of public highways" appearing in Section 3. While there are differences in treatment of Reservation and non-Reservation lands in Section 4, the Section does require Secretarial approval of telephone rights-of-way for all kinds of Indian lands. If Section 3 of the Act is interpreted to require Secretarial approval of lines built on highways, in addition to the approval of the highway itself, then it is in a measure inconsistent with Section 4, which requires no such approval. The two sections can be brought into harmony if Section 4 is interpreted to govern telephone lines in public highways and Section 3 is interpreted to relate to all other telephone lines. There is a difference between the nondamaging use of a right-of-way for telephone purposes in a highway already removed from the control of the Secretary and the Indian owner and a use which puts a new burden on unburdened lands. There is no reason to distinguish between Reservation and non-Reservation lands insofar as the incidental use of public highways is concerned. The physical effect is the same in either case. In this view of the Act, the reference to it in the approval of the plat did not limit the grant to the county.

For these same reasons the Acts of February 15, 1901, 31 Stat. 790, 43 U.S.C. § 959,[4] and the Act of March 4, 1911, 36 Stat. 1253, 43 U.S.C. § 961, even if otherwise applicable, should not be held to diminish the scope of Section 4 of the Act of March 3, 1901.

■ It is urged that, since there is neither a tribal consent nor a Secretarial grant of a right-of-way for the buried cable, the use of the highway is a trespass by virtue of the Act of February 5, 1948, 62 Stat. 17–18, 25 U.S.C. §§ 323–24. The grant of the right-of-way for the highway was made

---

**3.** Lands within the exterior boundaries of the Reservation were sold to non-Indian settlers under the Act of April 23, 1904, 33 Stat. 302, and non-Indian ownerships are scattered randomly throughout the Reservation.

**4.** The United States reads the Act of February 15, 1901, as permitting other uses on existing rights-of-way. The words "permit the use of rights-of-way" is awkward, but the remainder of the Act, which speaks of reservoirs, canals, and ditches, is hardly compatible with the use of already existing rights-of-way. Likewise, the land use authorized in the Act is not confined to the boundaries of any existing rights-of-way, but is measured by the extent of the land occupied by the authorized structure.

in 1916. The nature and extent of the title owned by the county is that intended by Congress at the time of the grant. *United States v. Illinois Central R.R.,* 89 F.Supp. 17 (E.D.Ill.1949), *aff'd* 187 F.2d 374 (7th Cir. 1951). If the state and its subdivisions were granted a right to make incidental uses of highway rights-of-way in 1916, then the grant is diminished if, by an act passed in 1948, they may not now do so. It is unnecessary to reach the problem of whether Congress could, after a highway was built in reliance upon a grant, constitutionally change the terms of the grant, because it is clear here that Congress did not intend to do so.

. . . The rule has been expressed in varying degrees of strength but always of one import, that a retrospective operation will not be given to a statute which interferes with antecedent rights or by which human action is regulated, unless such be "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature."—*Union Pacific R.R. v. Laramie Stock Yards Co.,* 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913)

Section 4 of the Act of February 5, 1948, 62 Stat. 18, 25 U.S.C. § 326[5], negates the thought that vested rights were to be affected.[6]

■ Mountain Bell does have a right to maintain its buried telephone cable in the highway right-of-way and is not trespassing.

This opinion constitutes the findings of fact and conclusions of law of the court.

Let judgment be entered accordingly. Defendant shall prepare a judgment in accordance with Rule 14 of the Rules of this Court.

5. "Sections 323–328 of this title shall not in any manner amend or repeal the provisions of the Federal Water Power Act of June 10, 1920 (41 Stat. 1963), as amended by the Act of August 26, 1935 (49 Stat. 838), nor shall any existing statutory authority empowering the Secretary of the Interior to grant rights-of-way over Indian lands be repealed."

6. The Act is puzzling. Section 2 requires tribal consent to all grants of rights-of-way, but Section 3 continues in force many laws which grant the Secretary authority to grant rights-of-way without tribal consent.