UNITED STATES of America, Plaintiff,

v.

GATES OF THE MOUNTAINS LAKE-SHORE HOMES, INC.; William G. Sternhagen; Montana Power Company; Chris Gardner, Art Woods and Mike Kovich, County Commissioners of Lewis and Clark County of the State of Montana, Defendants,

and

The Mountain States Telephone and Telegraph Company, Intervenor,

and

John H. Noble, Jr.; Barry L. Hjort and Sandra M. Hjort; John P. McGuire and Shirley McGuire; Vencie Terrell and Jacqueline Terrell; Jack B. Moore and Ruth M. Moore; Clark King; William H. Tangen; Joan A. Pallister and Steve Pallister; Daryl V. Harwood and Bonnie R. Harwood; Patricia Petaja Seiler; Paul D. Otto and Connie R. Otto; Evelyn Vogl; Scott R. Bentz and Kathleen A. Bentz; Allen M. Cowperthwaite and Alice Cowperthwaite; Roger K. Stenquist and Barbara K. Stenquist; Joseph A. Halke and Margaret S. Halke; Gladys Grimm; Bruce Holm; Vernon Craig; Jeff D. Bartsch and Mary K. Bartsch; Mike Sather and Charlotte Sather; Gerald Butcher and Margaret Butcher; Eddy A. Crowley; Margaret Robinson, Intervenors.

No. CV–81–294–H.

United States District Court,
D. Montana,
Helena Division.

June 3, 1983.

Dorothy R. Burakreis, Atty., Dept. of Justice, Land and Natural Resources Div., Washington, D.C., Robert L. Zimmerman, Asst. U.S. Atty., Justice Dept., Billings, Mont., for plaintiff, United States of America.

P. Keith Keller, Keller, Reynolds, Drake, Sternhagen & Johnson, Helena, Mont., for defendants Gates, Sternhagen, and Montana Power Co.

Thomas C. Honzel, Deputy Lewis and Clark County Atty., Helena, Mont., for defendants Gardner, Woods and Kovich.

Lawrence D. Huss, Helena, Mont., for intervenor Mountain States Tel. and Tel. Co.

Jerome T. Loendorf, Harrison, Loendorf & Poston, Helena, Mont., for intervenors, lot owners Noble et al.

## MEMORANDUM OPINION

BATTIN, Chief Judge.

This matter is before the Court on cross motions for summary judgment. The United States brought this action to enjoin defendants from the use of two roadways within the Helena National Forest—the American Bar and the Hoffman Cutoff—for an underground electrical power line. The United States also seeks declaratory relief as to the scope of the federal grant that permitted creation of the American Bar roadway, under the Act of July 26, 1866, 14 Stat. 253, R.S. 2477, 43 U.S.C. § 932 (1970 ed.). Jurisdiction is predicated on 28 U.S.C. § 1345.

The Court has reviewed and considered the briefs, attached affidavits and exhibits, and oral argument. For the reasons discussed below, the Court finds that the defendants prevail with respect to their right to use the American Bar roadway for underground power lines without permission of the Forest Service, and that the United States prevails in its request to enjoin use of the Hoffman Cutoff for underground

power lines. Some defendants argue that while the issue of the scope of the easement of the two roads is ripe for summary judgment, it would be improper to grant either party summary judgment on the two equitable defenses raised by defendants—estoppel and laches. The Court disagrees with that assessment; viewing all disputed facts and inferences in favor of the defendants reveals that the defendants cannot, as a matter of law, prevail on either defense.

## FACTS

The county road referred to as the American Bar road was declared a public road in 1901 by Lewis and Clark County, pursuant to a grant of Congress, 43 U.S.C. § 932, Revised Statute No. 2477.[1] There is no dispute that the county properly accepted the R.S. 2477 land grant; that is, the American Bar road is a properly dedicated R.S. 2477 road. Section 8 of R.S. 2477 states in relevant part:

[T]he right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted.

After dedication of the American Bar road, the federal land surrounding it, consisting of unreserved public domain land, was reserved as part of the Helena National Forest by the Big Belt Proclamation of October 3, 1905.

The spur road referred to as the Hoffman Cutoff was built during 1907–08 by a homesteader to connect his homestead to the American Bar road. The Hoffman Cutoff was never declared a public road because it was constructed after the surrounding federal land had become a National Forest. The Hoffman Cutoff is therefore a part of the National Forest system roads; it does not have the same status as the R.S. 2477 American Bar road. In 1973, the Gates of the Mountains Lakeshore Homes Subdivision (the Subdivision) was developed along the shores of the Missouri River, with primary access via the American Bar road and the Hoffman Cutoff. In January 1975, Montana Power Company, an electrical utility, submitted an application to the Forest Service for a special use permit to construct an underground power line along the American Bar road to the Subdivision. The Forest Service prepared an environmental analysis to evaluate the necessity and impact of the proposed power line. The permit was denied by the Forest Service. The denial was administratively appealed and sustained by the Regional Forester in December of 1977.

On or about January 10, 1978, the County Commissioners of Lewis and Clark County granted the Subdivision the right to bury an electrical utility cable along the American Bar road. The County acted pursuant to Montana Code Annotated (hereinafter, MCA) § 69–4–101 (1981).[2]

On or about June 23, 1978, the developer of the Subdivision installed the power line that is the subject of this lawsuit under the American Bar and Hoffman Cutoff roads. The installation was done without a Forest Service permit. At the time of the power line installation, Forest Service personnel initially attempted to prevent the line installation, but the power line was installed as planned, with a small variation. According to the affidavit of defendant William Sternhagen, developer of the Subdivision, a Forest Service representative recommended

1. This statute was repealed on October 21, 1976, by § 706(a) of the Federal Land Policy and Management Act (FLPMA), 90 Stat. 2793.

2. MCA § 69–4–101 USE OF PUBLIC RIGHT–OF–WAY FOR UTILITY LINES AND FACILITIES. A telegraph, telephone, electric light, or electric power line corporation or public body or any other person owning or operating such is hereby authorized to install its respective plants and appliances necessary for service and to supply and distribute electricity for light, heating, power, and other purposes and to that end, to construct such telegraph, telephone, electric light, or electric power lines, from point to point, along and upon any of the public roads, streets, and highways in the state, by the erection of necessary fixtures, including posts, piers, and abutments necessary for the wires. The same shall be so construed as not to incommode or endanger the public in the use of said roads, streets, or highways, and nothing herein shall be so construed as to restrict the powers of city or town councils. (Previously codified as Revised Codes of Montana § 70–301 (1947).)

that the line be diverted off the American Bar road after two or three miles and routed under the Hoffman Cutoff for environmental reasons. Other than the one-half mile diversion under and along the Hoffman Cutoff, the power line route was approximately the same route described in the unsuccessful 1975 application by the Montana Power Company. The line traverses approximately three miles of the American Bar road and one-half mile of the Hoffman Cutoff before it reaches the privately-owned Subdivision.

At some time between June and September 1978, the Montana Public Service Commission required defendant Montana Power Company to acquire the buried power line from the Subdivision and to supply electrical services as requested by utility customers.

By letter dated September 13, 1978, to defendant William Sternhagen, the Forest Service requested removal of the power line from both the American Bar and Hoffman Cutoff roads. By letter dated September 20, 1978, the request was refused, and the Forest Service was informed of Montana Power's ownership of the power lines. This lawsuit was filed by the United States on December 9, 1981.

## CONTENTIONS

The United States contends that Lewis and Clark County was without authority to approve the burial of the power line along the American Bar road and that the section of the power line under the Hoffman Cutoff Forest Service road has not been properly authorized by the Forest Service. The United States requests that use of the power line be discontinued and the roadway surface restored to a condition satisfactory to the Forest Service.

Defendants vigorously argue that the county had authority under MCA § 69–4–101 (1981) and decisions of the Montana Supreme Court to approve the burial of the power line along the American Bar road. Defendants County Commissioners and Montana Power Company, and intervenor Mountain States Telephone take no position

on the use of the Hoffman Cutoff for the buried power line; their concern is only the use of the county road, the American Bar. The remaining defendants presumably do dispute the position of the United States opposing usage of the Hoffman Cutoff, yet argument on this issue is conspicuously absent. Defendants raise the affirmative defenses of estoppel and laches. For the sake of brevity and ease of reference, the position opposed to the United States will be identified as that of "defendants," without further specification to a particular defendant or intervenor.

## AMERICAN BAR ROAD

### ISSUE NO. 1: Scope of Grant Determined by State or Federal Law

■ The parties disagree on whether state or federal law applies in considering if the scope of the R.S. 2477 grant includes allowance of a buried utility line. Both parties cite United States Supreme Court cases that purport to support their respective positions. The United States contends that federal statutes, administrative and case law is the measure by which the scope of pre-existing R.S. 2477 roads are to be examined; the defendants contend that Montana statutory and case law is the proper authority. In the opinion of this Court, the United States overlooks the distinction between pre-existing R.S. 2477 roads and those prospective roadways that require acceptance of the R.S. 2477 grant by the state and county. Supreme Court decisions make the above distinction and hold that state law controls the interpretation of the scope of pre-existing R.S. 2477 roadways, whereas federal law controls the establishment of new R.S. 2477 roadways. Federal law answers the question: Was the R.S. 2477 grant properly accepted at the time the highway easement was first created? State law answers the question: Is the proposed new use of the pre-existing R.S. 2477 highway easement a highway purpose? State law, as analyzed below, must be interpreted to allow buried utility lines along pre-existing R.S. 2477 roads. Thus, the defendants

prevail in their contention that the permission of the proper local governmental unit, not the National Forest Service, is all that is required to bury utility lines under the American Bar R.S. 2477 roadway.

The distinction between determining the scope of a pre-existing R.S. 2477 grant and, whether an R.S. 2477 grant was initially accepted in a proper manner, (whether a R.S. 2477 roadway exists at all) can best be illustrated by contrasting the cases cited by the parties.

The United States relies primarily on two cases for the proposition that federal law applies to determine the scope of the R.S. 2477 roadway: *Utah Power & Light Co. v. United States,* 243 U.S. 389, 402, 37 S.Ct. 387, 388, 61 L.Ed. 791 (1916), and *Humboldt County v. United States,* 684 F.2d 1276 (9th Cir.1982). This Court believes the cases stand for a different proposition: that federal law determines whether an easement is initially created in conformance to a federal grant.

In *Utah Power & Light Company v. United States,* 243 U.S. 389, 402, 37 S.Ct. 387, 388, 61 L.Ed. 791 (1916), the issue before the Court was whether the plaintiff had accepted the land grant from the federal government, pursuant to R.S. 2339 and R.S. 2340, when it initially occupied the land for hydroelectric power generation. These two revised statutes granted claimants the right-of-way over public lands for ditches, canals, and reservoirs used in diverting, storing and carrying water for "mining, agricultural, manufacturing and other purposes." *Id.* at 406, 37 S.Ct. at 390. Utah Power & Light placed dams, reservoirs, powerhouses, transmission lines, and pipelines on the unreserved public lands without seeking a special use permit from the federal government. Utah Power & Light claimed that by its actions it had successfully accepted the federal government's land grant under R.S. 2339 and R.S. 2340; the United States argued that the initial use to which the land was put (generation of hydroelectric power) did not constitute a proper acceptance of the land grant.

The high court disagreed with Utah Power's position that its claim of a successful acceptance of the grant must be interpreted by the laws of Utah, not federal law. The Court held that only through Congressional action can the rights to land belonging to the United States be acquired by the states; thus, federal law, not state law, will control whether an easement has been properly accepted.

In *Humboldt County v. United States,* 684 F.2d 1276 (9th Cir.1982), the Ninth Circuit directly addressed the initial creation of rights in federal land under R.S. 2477. *Id.* at 1280. The suit arose when Humboldt County passed a resolution declaring two roads leading to a recreational area to be claimed under R.S. 2477. The Bureau of Land Management refused to open the roads and Humboldt County filed suit to establish the county's right to the roads. Revised Statute 2477 provides:

> [T]he right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.

The Court held that Humboldt County did not acquire a right of way under R.S. 2477 for two reasons: 1) the lands surrounding and including the roadways were not public lands within the meaning of R.S. 2477 "public lands" as interpreted under federal law; 2) that R.S. 2477 was an Act that opened surveyed and unsurveyed mineral lands to "exploration and occupation . . ."; and that the proposed use of the roads by Humboldt County was a purely recreational use not in accord with the statutory purpose; hence, the land was not properly claimed under R.S. 2477.

The Court in *Humboldt County* determined that federal law, rather than state law, was the proper law to apply in determining whether the county had properly accepted the grant. *Id.* at 1280. Attention must be focused on the question presented to the Circuit Court—did the county successfully claim the roadway under R.S. 2477? Because no R.S. 2477 roadway existed, the Court interpreted acceptance of R.S. 2477 according to federal law.

Both cases discussed above were cited by the United States for the proposition that federal law determines the scope of "highway purposes" under R.S. 2477. As analyzed by this Court, *Utah* and *Humboldt County* do not stand for that proposition; rather, federal law determines whether an R.S. 2477 grant is *initially, successfully* claimed by a state or local government. Once a grant has been successfully claimed, and the right-of-way for the construction of a highway over public lands has passed into the hands of the state or local governmental entity, state law determines the scope of highway purposes. The cases cited below stand for such a rule.

In *United States v. Oklahoma Gas & Electric Co.,* 318 U.S. 206, 63 S.Ct. 534, 87 L.Ed. 716 (1942), the question presented was whether permission from the United States to the State of Oklahoma to establish a highway over allotted Indian land included the right to permit rural electric service lines within the highway boundaries. Oklahoma Gas was given permission to construct the roadway in 1928 by authority of the Act of March 3, 1901, 31 Stat.L. 1058, 1084 (not R.S. 2477). Section 4 of that Act provided:

> That the Secretary of the Interior is hereby authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper state or local authorities for the opening and establishment of public highways, in accordance with the laws of the state or territory in which the lands are situated, through any Indian reservation or any lands which have been allotted in severalty to any individual Indians under any laws or treaties but which have not yet been conveyed to the allottees with full power of alienation. *Id.* at 208, 63 S.Ct. at 535.

In 1936, Oklahoma Gas was authorized to install electrical service lines along a roadway through the allotted lands. The Secretary of the Interior considered the installation of the power lines as unlawful because in his opinion federal law required a special use permit but none was sought from or given by his department. The United States argued that federal law controlled the scope of the meaning of "highway use"; that electrical service lines were not within the scope of highway use; therefore, a special use permit was required. In support of its contention that federal law controls, the United States pointed to the Act quoted above as expressing Congressional intent that state law would be applicable for opening and establishing such roads, and inferred that state law is limited to *only* the opening and establishment of the roads, not determining the scope of the "highway purpose." The Supreme Court rejected this construction:

> Its [the United States'] interpretation gives the act a very limited meaning and substantially confines state law to governing procedures for "opening and establishment" of the highway. It offers as examples of what is permitted to state determination, whether a state or county agency builds the road, whether the funds shall be raised by bond issue or otherwise, and the terms and specifications of the construction contract. The issue is between this narrow view of the state's authority and the broader one which recognizes its laws as determining the various uses which go to make up the "public highway," opening and establishment of which are authorized.

> We see no reason to believe that Congress intended to grant to local authorities a power so limited in a matter so commonly subject to complete local control.

> It is well settled that a conveyance by the United States of land which it owns beneficially or, as in this case, for the purpose of exercising its guardianship over Indians, is to be construed, in the absence of any contrary indication of intention, according to the laws of the state where the land lies. Presumably Congress intended that this case be decided by reference to some law, but the government has cited and we know of no federal statutory or common law rule for determining whether the running of the electric service lines here involved was a highway use. These considerations, as well as the explicit reference in the act to state law in the

matter of "establishment" as well as of "opening" the highway, indicate that the question in this case is to be answered by reference to that law, in the absence of any governing administrative ruling, statute, or dominating consideration of congressional policy to the contrary. We find none of these. *Id.* at 209–210, 63 S.Ct. at 535–536. (Footnotes omitted.)

The above quotation supports the position of the defendants in this case, that is, that the scope of the grant, once it has been successfully accepted, is determined by state law. However, as pointed out by the plaintiff United States, *Oklahoma Gas* involved allotted Indian land and interpreted a statute other than R.S. 2477. These differences from the case at bar are not essential to the reasoning process of the Supreme Court, and do not, therefore, disturb this Court's application of the rule in *Oklahoma Gas.* Moreover, the Supreme Court's language indicates that an explicit reference to state law is not essential before state land can be applied. In fact, the holding specifically considers factors beyond the "opening and establishment" language of the land grant statute in *Oklahoma Gas.* Considerations mentioned by the Supreme Court that are not uniquely limited to Indian allotments include: (1) absence of explicit, written intent to interpret the scope of the grant by federal laws; (2) presumption that Congress intended to refer to some law and the absence of reference to federal law concerning highway use implies an adoption of state law; (3) scope of highway use is a "matter so commonly subject to complete local control." Therefore, the absence of a specific reference to state law in R.S. 2477 and the fact that the dispute in *Oklahoma Gas* occurred on Indian allotment land does not dissuade this Court from following the general rule of *Oklahoma Gas* requiring consideration of state law in determining the scope of a highway purpose.

In *United States v. Mountain States Telephone,* 434 F.Supp. 625, 627 (D.Mont.1977), this Court applied the holding of the United States Supreme Court in *Oklahoma Gas, supra,* to a dispute over a telephone line buried in a grant road on the Flathead Indian Reservation. This Court held that *Oklahoma Gas* did apply, and that Montana law of 1916, when the grant of the right-of-way was made, not federal law, determined the measure of a roadway grant made pursuant to the Act of March 3, 1901, 31 Stat. 1084, 25 U.S.C. § 311. *Id.* at 627, 628–29.

The reasoning of the Court in *Mountain States* is applicable here. In *Mountain States,* the Court held that state law applied to the roadway grant over the reservation because Congress granted to the states the right to build roads over the reservation. *Id.* at 627. It was by the authorization of Congress that the states have the right to build the roads. It was therefore up to Congress which law would measure the grant. Absent reference to federal law within the grant statute, or compelling policy reasons, state law controlled the right to bury telephone cables along state grant roadways, even though the roadway was through an Indian reservation. Similarly, in this case the Congressional grant of the roadway was without explicit reference to the controlling interpretive law.

In *Mountain States,* as here, the United States argued that there were administrative regulations and policy considerations that indicated a Congressional policy to interpret the grants by federal law. Administrative regulations, et cetera, enacted after the acceptance of the right-of-way cannot have a retroactive effect. *Mountain States, supra* at 628. The United States has not cited to this Court convincing evidence of a Congressional intent to require federal law to apply to the American Bar road R.S. 2477 grant. There is, however, convincing evidence that the Forest Service has recognized the applicability of state law in some circumstances. Forest Service Manual § 2706–6(c) makes the following reference:

6. USES ON ROAD RIGHTS-OF-WAY OWNED BY THE STATES OR THEIR POLITICAL SUBDIVISIONS

  \*      \*      \*      \*      \*      \*

c. Rights-of-way established by the States or political subdivisions prior to acquisition of those lands for National Forest purposes are subject to and are controlled by applicable State law and court decisions. In some States, land included in these rights-of-way can be used for telephone lines and other public utilities without permission of the Forest Service. In other States, permission of the Forest Service is required.

The above section of the Forest Service Manual applies to rights-of-way established and perfected prior to acquisition of the land for forest purposes, precisely what occurred in the instant suit;. four years after the American Bar road was dedicated the surrounding land became a National Forest. Of course, the land over which the road traveled was unreserved public land prior to the 1901 R.S. 2477 highway grant, but the lands were not "acquired for National Forest purposes" until 1905. Hence this section is applicable to the case at bar as an indication the Forest Service has recognized in the past the application of state law to rights-of-way older than the surrounding National Forest.

In sum, this Court finds that *Oklahoma Gas* and *Mountain States,* while not directly on all fours with the factual circumstances in this case, can logically and consistently be extended to hold that state law, not federal, measures the scope of R.S. 2477 grants absent an explicit reference to federal law or compelling policy considerations. State law controls not because of the power of the state, but because of Congressional adoption of state law as the measure of the federal grant. The cases cited by the United States, primarily *Utah, Humboldt* and their progeny, are distinguished by their focus on the initial, successful acceptance of

a grant by a local government, and not the measure of that pre-existing grant.

## ISSUE NO. 2: Scope of Grant as Determined by State Law

■■ The nature and extent of the title owned by the county and, hence, the extent of the county's authority to allow installation of the power line, is that intended by Congress at the time of the grant of the right-of-way, here, 1901. *Mountain States,* 434 F.Supp. at 628–29. And Congress intended the scope of the properly accepted R.S. 2477 roadway to be the extent allowed by state law at the time the American Bar road came into being in 1901.[3] The temporal language, "at the time of the grant of the right-of-way," refers to the date on which the grant is accepted by the local governmental unit, not the date of passage of the grant statute by Congress. The right-of-way for the American Bar road was created in 1901; R.S. 2477 was enacted by Congress in 1866. This interpretation is apparent from *Mountain States* wherein Justice Smith stated, "The grant of the right-of-way for the highway was made in 1916." *Id.* at 628–629, whereas, the authorization act of Congress was the Act of March 3, 1901.

The rule setting 1901, and not 1866, as the year in which state law should be examined, is consistent with this Court's resolution of the preceding issue (the scope of the pre-existing grant is measured by state law) in that the state law most reasonably associated with the acceptance of the grant of the right of way is the law contemporaneous with the acceptance of the right-of-way. Thus, an interpretation of state law at the time Lewis and Clark County declared the American Bar road a public road, on March 21, 1901, will determine whether

**3.** The United States cites *Leo Sheep Co. v. United States,* 440 U.S. 668, 681–82, 99 S.Ct. 1403, 1410–1411, 59 L.Ed.2d 677 (1979), for a contrary holding: That the date on which the congressional granting statute becomes effective is the date on which the scope of the easement should be determined. In the case of R.S. 2477, that would be 1866, before creation of the American Bar road and before Montana

became a state. *Leo Sheep* does not apply to the case at bar because it was concerned with the extent of private ownership rights in the checkerboard land sections granted to the western Railroads. The extent of federal land grants to private enterprise for private purposes is correctly interpreted by reference to federal law at the time of passage of the grant statute.

the burial of electrical power lines is a proper highway use.

Montana law in 1901 exists in two primary sources: case law and statutory law. Case law reveals that by 1901 the Montana Supreme Court had already adopted a liberal view of "highway purposes" to include the use of rights-of-way for the delivery of utilities. (See discussion below.) Montana statutes reflect the Legislature's understanding of the changing uses to which public rights-of-way may be put. In 1895, Montana enacted § 1000, Civil Code,[4] that authorizes telephone and telegraph installation along public highways. At the time of the grant of right-of-way for the American Bar road in 1901, no statute specifically allowed installation of power lines along public highways, although such legislation was passed in 1905.

The Montana Supreme Court in *Bolinger v. Bozeman,* 158 Mont. 507, 493 P.2d 1062 (1972), examined the development of Montana's treatment of the proper use of a public highway easement. Citing cases as old as 1892, the Supreme Court found a consistent theme of expanding "highway purposes" to include contemporary utility usage limited only by the proviso that the uses "are not inconsistent with the reasonably safe and practical use of the highway in other, and unusual and necessary modes, and provided they do not unreasonably impair the special easements of abutting owners . . . ." *Id.* 493 P.2d at 1066. Although the dispute over the burial of a sewer line in *Bolinger* was between a county government and a private fee owner, not a county government and the United States, the question presented was similar to the question presented here: Were the rights of the fee owner invaded when the easement was used in ways not explicitly provided for in the language of the easement? In *Bolinger,* the Montana Supreme Court examined the nature of the right-of-way possessed by the county arising from an 1891 grant. The

Court concluded that the easement was not limited to the 1891 usage, but included all new and improved methods of transportation and communications, including the burial of sewer lines.

In *Bolinger* the Montana Supreme Court cited *Hershfield v. Rocky Mountain Bell Telephone Company,* 12 Mont. 102, 29 P. 883 (1892) for the first pronouncement of the Montana Supreme Court in favor of a liberal interpretation of public highway easement uses. Citing *Kipp v. Davis-Daly Copper Co.,* 41 Mont. 509, 516–518, 110 P. 237, 240 (1910), the Montana court again liberally interpreted the future uses to which an easement may be put:

> But it must be borne in mind that the way was created for all uses to which it might reasonably be put in view of improved methods and increasing needs of the public; and the limitation is to be given a construction which will not defeat this original purpose. *Bolinger,* 493 P.2d at 1067, *citing Kipp, supra.*

According to the Montana Supreme Court, Montana "committed itself" to · the liberal perspective on future easement uses in the *Hershfield* case, *supra,* decided in 1892:

> In *Hershfield* [in 1892] . . . this court also committed itself to this view [the liberal Minnesota view described in *Cater v. Northwestern,* 60 Minn. 539, 63 N.W. 1111 (1891)]. *Bolinger,* at [493 P.2d] 1068, *citing Jones v. Burns,* 138 Mont. 268, 357 P.2d 22 (1960).

This interpretation of *Hershfield* to include future uses of a public highway easement not explicitly referred to in the language of the easement, but consistent with the needs of the public, is dispositive of the question of the scope of the R.S. 2477 grant under which the American Bar road was created in 1901.

In light of the above discussion, it must be concluded that the law of Montana at

---

4. A telegraph or telephone corporation, or a person, is hereby authorized to construct such telegraph or telephone line or lines from point to point, along and upon any of the public roads, by the erection of necessary fixtures, including posts, piers and abutments, necessary for the wires; but the same shall not incommode the public in the use of said roads or highways.

the time the right-of-way was created allowed for public utility lines to be buried along public highway easements without special permission from the fee owner, in this case the United States Government.

> [T]he dedicator is presumed to have intended the property to be used in such a way by the public as will be most convenient and comfortable and according to not only the properties and usages known at the time of the dedication, but also to those justified by lapse of time and change of conditions. *Bolinger, supra,* 493 P.2d at 1069.

Therefore, the Lewis and Clark County Commissioners were acting within the scope of their authority when they authorized the burial of the power line along the American Bar road.

## HOFFMAN CUTOFF ROAD

■ The Hoffman Cutoff was built during 1907–08 by a homesteader to connect his homestead to the American Bar road. In 1905, prior to the construction of the Cutoff, the area surrounding the American Bar road, including the land on which the Hoffman road traversed, was declared the Helena National Forest. The Hoffman Cutoff is a part of the national forest system roadways; it is not an R.S. 2477 road. The permit issued by Lewis and Clark County for burial of the power line along the American Bar road does not purport to grant permission to use the Hoffman Cutoff.

At the time the power line was buried, a suggestion was made—allegedly by a Forest Service representative—that the power line be diverted off the American Bar road and routed under the Hoffman Cutoff for environmental reasons. For whatever reason, the power line was buried under the Hoffman Cutoff from the Subdivision to the intersection of the Cutoff and the American Bar road.

The defendants do not argue that statutory or common law grants allow burial of the power line along the Hoffman Cutoff National Forest road. Moreover, the defendants do not discuss the obvious distinction between a forest service road (Hoffman Cutoff) and an R.S. 2477 roadway (American Bar road). In fact, there are few references in the many briefs of the defendants to the Hoffman Cutoff. The reason for the paucity of argument is apparent. The position of the United States is sound: permission from the Forest Service is required for utility service placement along National Forest roads. *See* 43 U.S.C. §§ 1761, *et seq.*

The defendants cite no statutes or case law that would allow the use of the Hoffman Cutoff without the permission of the Forest Service. The defendants do raise other arguments—estoppel and laches—that the use of the Hoffman Cutoff for the power line should not be enjoined. Those arguments, discussed below, are not persuasive and must fail as a matter of law. Therefore, the Court must agree with the United States that the use of the Hoffman Cutoff for electrical power lines is unlawful and must be enjoined.

## EQUITABLE DEFENSES: ESTOPPEL AND LACHES

Defendants raise the equitable defenses of estoppel and laches. Defendants claim that two agents of the United States, Parley Waters and Larry Jakub, gave verbal authorization to install the power line at issue, giving rise to an estoppel; and that the three years from 1978 when the power line was installed until 1981 when this suit was filed, constitutes a delay sufficient to bar removal of the power line because of estoppel and laches. Because defendants prevailed with respect to the claim that Forest Service permission to bury the power line on the American Bar road was not needed, the issue of estoppel and laches with respect to the American Bar roadway is moot.[5] However, the issues of estoppel and laches remain with respect to the Hoff-

---

**5.** The Court's analysis would, of course, be identical with respect to estoppel and laches concerning the power line under the American Bar road, if that issue were still before the Court.

man Cutoff. Even assuming all of the facts as alleged by defendants, and considering all inferences reasonably deducible from those facts, defendants must fail in their attempt to bar Government action on the Hoffman Cutoff on the basis of estoppel or laches.

The relevant facts include: In 1975, the Montana Power Company applied for and was refused permission to bury an electrical power line along approximately the same route as the actual installation. The appeals process confirmed the Forest Service decision not to allow the power line to be placed in the roadway in December 1977. For the sake of this summary judgment motion, it must be assumed that oral permission to bury the power line was given as alleged by defendants. At the time the power line was installed (June 1978), it is alleged by defendants, and taken as true by this Court, that a Forest Service representative requested the power line be buried along the Hoffman Cutoff as part of the utility route. By letter dated September 13, 1978, to William Sternhagen, the Subdivision developer, the Forest Service requested removal of the power line from both the American Bar roadway and the Hoffman Cutoff. The request for removal of the power line was denied by letter dated September 20, 1978. The Court also assumes that defendant Lot Owners were unaware of the disputed status of the power line until suit was filed on December 9, 1981.

At the time the power line was placed under the roadways, the Code of Federal Regulations, and Forest Service regulations and directives all required a written special use permit for the installation of power lines along National Forest Service roads such as the Hoffman Cutoff. *See* 36 C.F.R. § 251, *et seq.;* Forest Service Manual Chapter 2700, *et seq.* Thus, the agents of the United States were without authority to grant verbal authorization to install the power lines along the Hoffman Cutoff. Unauthorized action by government officials is not binding on the United States. *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *see*

*also United States v. California,* 332 U.S. 19, 39–40, 67 S.Ct. 1658, 1668–1669, 91 L.Ed. 1889 (1947).

The leading case on estoppel against the United States in this Circuit is *United States v. Ruby,* 588 F.2d 697 (9th Cir.1978). In addition to the ordinary elements of estoppel, "affirmative misrepresentation or affirmative concealment," by the government must be proved to establish an estoppel. *Id.* at 703–04. Defendants have failed to allege facts that if true would rise to the level of affirmative misrepresentation or concealment. The Subdivision developer was aware of both the Montana Power Company's failure to receive a permit to bury a power line along a substantially similar route, and the September 1978 Forest Service letter requesting that the power line be removed. The United States had responded twice that no permission to install the power line would be given. These facts do not show affirmative misconduct by the government. As a matter of law, defendants cannot establish an estoppel defense against the United States sufficient to obviate the necessity of a Forest Service permit for the power line on the Hoffman Cutoff.

The laches defense raised by defendants is apparently not raised separately and independently from the estoppel defense. It is well settled that the essence of laches is estoppel. *Black's Law Dictionary,* 787 (rev. 5th ed. 1979), *citing cases.* Defendants' failure to establish an estoppel eliminates the foundation of its laches defense. The laches claim rests on the fact that over three years elapsed between the installation of the power line and this suit, during which period the homeowners in the subdivision grew to rely on electrical power supplied by the buried power line.

The exchange of letters in September 1978 wherein the Forest Service demanded removal of the power lines, which was refused by defendant Gates of the Mountains Lakeshore Homes Subdivision, Inc., put the defendants on notice of the trespass and conclusively establishes the absence of "af-

firmative.misconduct." As a matter of law, considering the facts and circumstances as set out above, the three-year interval from installation of the power line to the filing of the law suit is not sufficient for the defendant to successfully assert laches as a bar to the requirement that a special use permit is required for utility burial along the Hoffman Cutoff, a National Forest Service road. It is unrebutted that this law suit was filed within the period allowable under the applicable statute of limitations, 28 U.S.C. § 2415(b).

In sum, the equitable defenses of estoppel and laches fail as a matter of law. The power line that services the subdivision is in trespass along the Hoffman Cutoff roadway.

### CONCLUSION

In the opinion of this Court, *Oklahoma Gas* and *Mountain States* are dispositive of the issue that state law, not federal law, should be the measure of the scope of a pre-existing R.S. 2477 grant. That law at the time of the grant of the right of way, in this case Montana law of 1901, determines the scope of the right-of-way. The Montana Supreme Court in *Bolinger* discussed at great length Montana's liberal interpretation of the scope of a "highway purpose". Since Montana's 1892 decision in *Hershfield,* a highway purpose includes the right to place contemporary public utilities on the public highway easement without additional compensation to, or permission from, the fee owner. Our conclusion: the Lewis and Clark County Commissioners acted within their authority when they authorized the burial of an electric power line along the American Bar roadway to the Gates of the Mountain Subdivision; no special use permit was required from the U.S. Forest Service.

The Hoffman Cutoff is not an R.S. 2477 public highway, and as such does not benefit from the above analysis. The Hoffman Cutoff is a National Forest Service road and uses of such roads is controlled by the Forest Service. Use of the Hoffman Cutoff without a special use permit from the Forest Service is unlawful.

The Court does not share the fear expressed by the United States that a decision for the defendants as to the R.S. 2477 issue would cause the destruction of a comprehensive National Forest policy. The R.S. 2477 roads created before the National Forests are not part of the National Forest roadway system and they never have been. *Duffield v. Ashurst,* 12 Ariz. 360, 100 P. 822, 825 (Ariz.1909). Moreover, state and local control over the uses to which the public highways can be put is hardly likely to result in unrestrained development of our National Forests. Where, as here, the R.S. 2477 roadway travels through a National Forest, the county cannot exert any control over development beyond the width of the easement. By the Court's ruling on the Hoffman Cutoff, the Forest Service has rightfully maintained its control over Forest Service roads.

In the early part of this century, new public highways played an important part in the settlement of this vast state. Today, public highways serve a different, but no less important purpose. By re-establishing flexible local control over local public highways, we can assure those who come after us that the unforeseeable changes of the future can be dealt with in a way that best suits whatever the future holds.

This Memorandum Opinion shall constitute the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a), Fed.R.Civ.P.

An appropriate order shall issue in accordance with this Memorandum Opinion.